**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:17-cv-00662-JRG |
| | § | (LEAD CASE) |
| SPRINT SPECTRUM L.P., | § | |
| NEXTEL OPERATIONS, INC., ERICSSON | § | **JURY TRIAL DEMANDED** |
| INC., TELEFONAKTIEBOLAGET LM | § | |
| ERICSSON, and ALCATEL-LUCENT USA | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:17-cv-00661-JRG |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON | § | |
| | § | |
| Defendants. | § | |

**THE T-MOBILE AND SPRINT DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     THE '330 AND '357 PATENTS ARE PATENT INELIGIBLE ......................................1

     A.     IV's Characterization of the Patents Is Unsupported..............................................1

     B.     The Challenged Claims Are Directed to an Abstract Idea.....................................1

     C.     Claim 26 Does Not Recite an Inventive Concept. ....................................................3

     D.     Claim 26 of the '330 Patent Is Representative.......................................................4

II.     THE '018 AND '466 PATENTS ARE PATENT INELIGIBLE .......................................5

     A.     IV Mischaracterizes the Purported Invention. .........................................................5

     B.     Claim 6 Is Directed to an Abstract Idea...................................................................5

     C.     Claim 6 Does Not Recite an Inventive Concept. ......................................................6

     D.     Claim 6 of the '466 Patent Is Representative............................................................7

III.     THE '828 PATENT IS PATENT INELIGIBLE..............................................................8

     A.     Representative Claim 15 Is Directed to an Abstract Idea. ......................................8

     B.     Claim 15 Does Not Recite an Inventive Concept. ....................................................9

     C.     Claim 15 Is Representative of All Claims in the '828 Patent ................................10

IV.     CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016)............................................................................................4

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016)............................................................................................7

*CCE v. AT&T Inc.*,
   No. 2:15-cv-576, 2017 WL 2984074 (E.D. Tex. June 27, 2017) ...............................7, 8, 9, 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)............................................................................................3

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..............................................................................1, 2, 3, 6, 8

*Image Processing Techs., LLC v. Samsung Elecs. Co.*,
   No. 2:16-cv-00505-JRG, Dkt. 305 (E.D. Tex. Oct. 24, 2017)......................................2, 3, 5, 9

*In re TLI Commcn's LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016).........................................................................................1, 6

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
   2017 WL 5041460 (Fed. Cir. Nov. 3, 2017)..........................................................3, 4, 7, 10

*Kroy IP Hldgs., LLC v. Safeway, Inc.*,
   107 F. Supp. 3d 677 (E.D. Tex. 2015) ................................................................................10

*Network Architecture Innovations LLC v. CC Network Inc.*,
   No. 2-16-cv-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017).................................4

*Personalized Media Commcn's, LLC v. Apple Inc.*,
   No. 2:15-cv-1366-JRG-RSP, 2016 WL 5719701 (E.D. Tex. Sept. 13, 2016).......................1, 4

*Two-Way Media Ltd. v. Comcast Cable Commcn's, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)...................................................................................3, 4, 7

I.      THE '330 AND '357 PATENTS ARE PATENT INELIGIBLE

A.      IV's Characterization of the Patents Is Unsupported.

IV's Step 1 and Step 2 arguments hinge on unsupported attorney argument that attempts to rewrite the specifications to manufacture analogies to *Enfish* and *Personalized Media*. IV starts by characterizing the "fixed time offset" of the "conventional paging procedure" as having two alleged problems: "(1) inefficiency and unreliability caused by signal fading and interference, and (2) inefficiency caused by the limited flexibility of a fixed allocation of resources." Dkt. 61 at 5-6, 13. Those "problems" are not described anywhere in the patents. The specifications say nothing about "inefficiency," "unreliability," "signal fading," "interference," "flexibility," or "reliability." The patents do not even describe any problems with the "fixed time offset" of the conventional paging procedure. '330 Patent at 2:5-41. Tellingly, IV's brief has an entire paragraph describing these problems without citing the patents or prosecution histories. Dkt. 61 at 6.[1] The patents simply have nothing to do with those problems.

B.      The Challenged Claims Are Directed to an Abstract Idea.

Defendants' Motion establishes that Claim 26's two-step method is directed to the abstract idea of "monitoring for an indicator that includes instructions for receiving information." Dkt. 26 at 4. IV's argument that this abstract idea "discounts" and "oversimplif[ies]" several limitations ignores that those limitations (e.g., "downlink transmissions," "shared channel,[2]" "the signal is derived from a radio network temporary identifier," and "a signal to indicate a page from a network device") merely limit the claim to a technological environment. *In re TLI*

---

[1] The specifications do not describe a handset in the "conventional paging procedure" as "***continually***" monitoring for a paging signal as IV contends (Dkt. 61 at 5); instead, they describe using "***Discontinuous*** Reception (DRX)" so that the handset only "needs to monitor the first paging signal at one paging occasion per DRX cycle." '330 Patent at 2:14-18.

[2] Contrary to IV's argument, Defendants' abstract idea accounts for the "indication" of a shared channel because it monitors for an "indicator."

*Commcn's LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (stating that limiting the claims to a particular environment—a mobile telephone—"does not make the claims any less abstract"). IV does not explain how any of those elements render the claim non-abstract. *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:16-cv-00505-JRG, Dkt. 305 at 6 (E.D. Tex. Oct. 24, 2017) ("IPT does not explain why the 'automatically updating' limitation transforms the abstract idea of generating a histogram into one deserving protection.").

IV's attempt to fault Defendants' fighter jet analogy only confirms the abstractness of the claim. IV's first argument—that the claim does not require "continuous" monitoring—fails because Claim 26 generically and functionally recites "monitoring" without specifying *how* the monitoring is performed (continuous or discontinuous). Defendants' analogy does not depend on how "monitoring" is done, as a pilot could monitor for communications continuously or only at select times (i.e., discontinuously). IV's second argument—that the second paging signal "can be sent on any channel selected by the network"—relies on a concept that is not recited in the claim or described in the specification. Instead, the claim merely recites a UE receiving a signal on the generic "shared channel." But, even if IV were correct, Defendants' analogy would still hold true, as the air traffic controller could indicate any channel at its choosing.

IV's reliance on *Enfish* does not save Claim 26. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). There, the court held the claim patent-eligible because the claimed self-referential table was a specific improvement to computer operability, rather than an abstract process "for which computers are invoked merely as a tool." *Id.* at 1336. Here, IV does not cite any limitation of Claim 26 that improves computer functionality and instead relies on purported improvements discussed nowhere in the patent. Claim 26 invokes a generic "UE" as a tool to perform the abstract idea without claiming any improvement to the UE itself. '330 Patent, Claim

2

26 (reciting "[a] method ***performed by a UE***" and all steps performed "by the UE").[3]  The use of a generic "UE" is not a "'specific, claimed feature[]' that allow[s] for an improvement to computer functionality." *Image Processing*, Dkt. 305 at 8 (distinguishing *Enfish*).

### C.      Claim 26 Does Not Recite an Inventive Concept.

Defendants' Motion explains that this claim is a two-step method spanning 10 lines consisting of basic "monitoring" and "receiving" steps that the specification describes as part of the "***conventional*** paging procedure." Dkt. 26 at 7-9; '330 Patent at 2:5-41.  IV's Response does not dispute the majority of that analysis.  The first argument IV presents—that the "combination of elements" provides "an inventive solution that is only applicable to wireless communication systems"—is a conclusory one. Dkt. 61 at 12.  IV does not specify what particular "combination of elements" IV is relying on or explain how the unspecified combination of claim elements is unconventional.  *Two-Way Media Ltd. v. Comcast Cable Commcn's, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017) (stating that "an inventive concept must be evident in the claims" and rejecting reliance on the specification at Step 2).  Moreover, applying the purported inventive concept "only" to "wireless communication systems" merely limits the claim to a technological environment, which does not impart patent eligibility.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).[4]

IV's second argument—that Claim 26 allows for "select[ing] the allocation of resources . . . for any given paging message" to "account for both channel conditions and capacity considerations" and improve "reliability"—again relies on unclaimed concepts that are not even

---

[3] IV argues that the claim provides "flexibility" because the second paging signal "can be transmitted on any channel."  But that concept appears nowhere in the patent.  Claim 26 more generally recites transmission of the second paging signal on the "indicated shared channel."

[4] IV's suggestion that there is an inventive concept because the PTO found the "combination of elements" inventive has been rejected.  *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 2017 WL 5041460, 2017-1147, at *6 n.4 (Fed. Cir. Nov. 3, 2017).

described in the patent. *Two-Way Media*, 874 F.3d at 1338. Claim 26 does not recite that the network "select[s] the allocation of resources . . . for any given paging message." *Id.* Claim 26 instead functionally recites that the UE "monitor[s]" for a generic "indication of a shared channel" without any further detail of what that generic "indication" entails.[5] These concepts therefore cannot supply an inventive concept.

### D.      Claim 26 of the '330 Patent Is Representative.

The test for whether claims are representative under § 101 asks whether the claims are "substantially similar and linked to the same abstract idea." *Network Architecture Innovations LLC v. CC Network Inc.*, No. 2-16-cv-00914-JRG, 2017 WL 1398276, at *2 n.1 (E.D. Tex. Apr. 18, 2017). Defendants' Motion explains how all claims of the '330 and '357 Patents satisfy that test. Dkt. 26 at 4 n.2, 11 n.7 (analyzing dependent claims). IV quotes various claim limitations, but does not argue for the patentability of other claims or present any meaningful argument for the "distinctive significance" of its quoted limitations. *Erie*, 2017 WL 5041460, at *5; *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1267 n.2 (Fed. Cir. 2016) (finding claim representative where patentee referred to dependent claims without presenting substantive argument). Regardless, IV's quotation of generic computer components (circuity and processor) in Claim 1 of the '330 Patent does not add anything non-abstract or unconventional to Claim 26. The only limitations IV quotes for Claims 11 and 30 of the '357 Patent are analogous to limitations in Claim 26 (e.g., sending "an allocation of resources for a shared channel" is

---

[5] IV relies, without any real analysis, on the distinguishable *Personalized Media Communications* case. *Personalized Media Commcn's, LLC v. Apple Inc.*, No. 2:15-cv-1366-JRG-RSP, 2016 WL 5719701 (E.D. Tex. Sept. 13, 2016). There, the court found that the claim elements themselves recited a "non-conventional and non-generic arrangement." *Id.* at *6. Here, however, IV does not point to any specific limitations that supply such an arrangement. The specification in that case also described that the claimed limitations supplied the benefit of "reliability," whereas here IV relies on unsupported attorney argument to supply that benefit.

4

analogous to monitoring for "an indication of a shared channel" in Claim 26). Those claims are therefore substantially similar and linked to the same abstract idea as Claim 26.

## II.     THE '018 AND '466 PATENTS ARE PATENT INELIGIBLE

### A.     IV Mischaracterizes the Purported Invention.

The '018 and '466 Patents share a specification with several other patents in a continuity chain and describe numerous different embodiments. '018 Patent at 4:12-5:12 (identifying at least thirteen different embodiments). In attempting to identify a problem and solution associated with the claims of these patents, IV's Response focuses on a particular embodiment that limits the number of "queues" that are eligible for resource allocation. Dkt. 61 at 16 (citing '018 Patent at 10:19-24, 10:64-66, 11:31-12:3); '018 Patent at 10:25-31, 10:37-12:3 (describing embodiment "to limit a number of queues served at a single instant of time"). That embodiment, however, is not related to the claimed embodiment of "allocating . . . resources . . . for data of each channel having a second parameter above zero prior to another channel's data for transmission having a third parameter less than or equal to zero," nor to the recitation of deriving one parameter from another. Indeed, those claim elements are not described in the patents, let alone in the embodiment that limits the number of queues. IV cannot rely on alleged improvements for an embodiment unconnected to the claims. *Image Processing*, Dkt. 305 at 11 (rejecting patentee's reliance on alleged improvement unrelated to challenged claim).

### B.     Claim 6 Is Directed to an Abstract Idea.

Defendants' Motion establishes that Claim 6 is directed to the abstract idea of ordering allocation of resources based on numeric rankings of parameters. This abstract idea is consistent with IV's characterization of the claim: "The claimed embodiment involves deriving additional parameters for each radio bearer, and allocating bandwidth . . . giving priority to some bearers (whose parameter is above zero) before others (whose parameter is less than zero)." Dkt. 61 at

16.    Both reflect that Claim 6 is directed to ordering allocation of resources ("allocating bandwidth . . . giving priority to some bearers") based on numeric rankings of parameters ("whose parameter is above zero"/"whose parameter is less than zero").  Thus, the patentee's characterization of the claim favors abstractness.  *In re TLI Commcn's*, 823 F.3d at 612.[6]

IV's primary argument is a conclusory reliance on the distinguishable *DDR*[7] and *Enfish* cases.  Dkt. 61 at 17.  *First*, *DDR* is inapplicable because the claimed method is directed to a problem that has long existed outside of computer networks (how to allocate resources) and is not necessarily rooted in computer technology (as evidenced by Defendants' analogy).  Moreover, IV's assertion that the claim is a "concrete system and set of devices" is belied by the claims; the claim recites generic components, such as a UE, a network device, and a processor.  *Second*, IV does not even contend that Claim 6 results in an "improvement to computer functionality itself" as is required under *Enfish*.  Nor could IV, as the claims recite using generic computer technology as a tool for carrying out the abstract idea.  *Enfish*, 822 F.3d at 1336.

## C.    Claim 6 Does Not Recite an Inventive Concept.

IV does not respond to the vast majority of Defendants' Step 2 arguments and does not point to any particular claim language as supplying an inventive concept.  Instead, IV devises its own characterizations of "putting limits on data that is received by the phone in order to perform an allocation, so as to minimize bandwidth 'overhead'" and "allowing the phone to perform its own uplink allocation (regardless of any specific algorithm used), using minimal input data to achieve an efficient allocation that can vary as the radio bearers' needs vary."  Dkt. 61 at 20-21.

---

[6] IV's response to Defendants' student analogy relies on unclaimed concepts ("real time" allocation of "wireless bandwidth") and incorrectly asserts that the claims "describe criteria . . . specific to telecommunications."  Dkt. 61 at 18 n.5.  The only claimed "criteria" are generic "parameters."

[7] IV's reliance on *DDR* at Step 1 is misplaced, as that case assumed an abstract idea and saved the claim only at Step 2.  *DDR*, 773 F.3d at 1257.

Those are not claim elements and cannot supply an inventive concept under Federal Circuit precedent.  *Two-Way Media*, 874 F.3d at 1338-39.

IV also relies on the distinguishable *Amdocs* case.  There, the claim recited a distributed architecture and the specification described that distributed architecture as "a critical advancement over the prior art."  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-02 (Fed. Cir. 2016).  Here, Claim 6 is performed at one location: a generic UE that performs the "receiving" and "allocating" steps.[8]  And, unlike the *Amdocs* specification, the specifications here state that "*any suitable distribution of functionality* between different functional units or logic elements may be used *without detracting from the inventive concept*." '466 Patent at 13:3-6.

### D.      Claim 6 of the '466 Patent Is Representative.

IV does not dispute that Claim 6 is representative of all independent claims and any dependent claims that do not recite "buffer occupancies" in the '018 and '466 Patents.  Dkt. 61 at 16-17.  IV quotes certain dependent claims that recite transmitting "indications of buffer occupancies" without explaining the "distinctive significance" of those limitations.  *Erie*, 2017 WL 5041460, at *5.  But those limitations are linked to the same abstract idea as Claim 6, because transmitting a generic indication that is not even used in Claim 6's method does not alter the underlying abstract idea.  And, in any event, those limitations do not separately impart patent eligibility.  These limitations are analogous to transmission of a power control headroom report in the patent-ineligible claim in *CCE*.  *See CCE v. AT&T Inc.*, No. 2:15-cv-576, 2017 WL 2984074, at *3-4 (E.D. Tex. June 27, 2017).  Like that claim, the quoted dependent claims recite

---

[8] The other independent claims in these patents also all recite an apparatus or method performed at a single location—either a UE or a generic "network device."  Other than confirming that Claim 6 is representative, reciting the same concept from different perspectives does not change the patent eligibility analysis.

transmission of a generic "indication of a buffer occupancy" that amounts to routine, insignificant pre- or post-solution activity—particularly where Claim 6 does not use the buffer occupancy indication.  The quoted dependent claims fall with Claim 6.

## III.     THE '828 PATENT IS PATENT INELIGIBLE

### A.     Representative Claim 15 Is Directed to an Abstract Idea.

Defendants' Motion establishes that Claim 15 is directed to the abstract idea of selectively calculating a transmit power level based on feedback from the receiver and/or the transmitter's own measurements.[9]  This abstract idea is consistent with IV's characterization of the claim: "Claim 15 requires dynamic adjustment of the UE 'transmit power' based on: (1) 'TPC commands' received from the network; and/or (2) determination of 'path loss.'"  Dkt. 61 at 24; *id.* at 28 (identifying the "inventive concept" as "a combined open loop/closed loop scheme for dynamically controlling UE transmit power").  Thus, the patentee's characterization of the invention favors a finding of abstractness.

IV primarily relies on the distinguishable *Enfish* case.  There, the court noted that a relevant question is whether the claim improves computer functionality itself or merely invokes computers as a tool to carry out the abstract idea.  *Enfish*, 822 F.3d at 1335.  Here, Claim 15, invokes computers (reciting steps performed by a "UE" and a "wireless network") as tools for carrying out the abstract idea without reciting any improvements to the "UE" or "wireless network" themselves.  IV's sole claim to an improvement—"more efficiently" compensating for path loss and interference—is not described in the specification.  *CCE*, 2017 WL 2984074, at *4 n.1 (rejecting reliance on improvement of "more efficient allocation" not described in

---

[9] IV's argument that Defendants' have discounted limitations fails.  The terms IV points to (e.g., "UE," "wireless network," "downlink channel," "single physical channel," and "allocation") merely limit the abstract idea to a technological environment.  IV's articulation of the "key concept" of the claim (Dkt. 61 at 26) omits many terms IV chides Defendants for overlooking.

specification).  And, IV's citations relate to an unclaimed method that employs *only* "combined loops" (i.e., combines open loop and closed loop) as shown in Figure 4, not the claimed method that employs *both* combined loops (as in the "calculating" step of Claim 15) *and* a separate open loop (as in the final "receiving" step of Claim 15).  '828 Patent at 11:60-12:54 (describing purported benefits of using "only" open loop in Figure 2, "only" closed loop in Figure 3, and combined loops in Figure 4); *id.* at 10:1-11 (describing Figure 4's calculation of transmit power as using TPC commands and path loss without any description of also using open loop); *Image Processing*, Dkt. 305 at 11 (rejecting reliance on improvements unrelated to challenged claim).

IV's attempts to distinguish the *CCE* case also fail.  Contrary to IV's argument, Claim 15 does not require further action of transmitting at a calculated power level, but instead recites calculating a transmit power to later transmit at that power.  Even if the claim did recite transmitting at the power level, that is analogous to the *CCE* claim's transmission of a power headroom report.  *CCE*, 2017 WL 2984074, at *3.  And Claim 15's recitation of "TPC commands" and "path loss" does not make the claim less abstract than *CCE*'s, but makes it like the variables in the *CCE* claim.  *Id.* (reciting "the nominal maximum transmission power").

**B.     Claim 15 Does Not Recite an Inventive Concept.**

IV fails to respond to nearly all of Defendants' Step 2 arguments.  When IV addresses Step 2, it argues that the inventive concept is a "combined open loop/closed loop scheme for dynamically controlling UE transmit power in a wireless network."  Dkt. 61 at 28.  IV argues there is an inventive concept because the "patent says this feature is novel, [and] the Patent Office found that was so."  *Id.*  Legally, IV is wrong, as the Federal Circuit has squarely rejected this argument.  *Supra*, at 3 n.4.  Factually, IV's recitation of the alleged "inventive concept" is subject matter that the Patent Office found to be conventional in the prior art.  *See* Dkt. 26, Ex. 6 at 2, 7 (rejecting claim reciting "calculating *at the remote transceiver*, a transmit power level for

transmission . . . *on the scheduled uplink transmission resource based upon* the path loss *and* the TPC command"). This subject matter cannot supply an inventive concept.

IV's last-ditch arguments regarding the distinguishable *DDR* case also fail. "*DDR Holdings* dealt with a patent that required doing something *to* a web page, not simply doing something *on* a web page, a difference that the court regarded as highly important to the issue of patent eligibility." *Kroy IP Hldgs., LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 689 (E.D. Tex. 2015). In contrast, Claim 15 recites performing the claim steps *on* a UE and a wireless network—employing those elements as a tool—not doing something *to* those claim elements.[10]

### C.    Claim 15 Is Representative of All Claims in the '828 Patent

Defendants' Motion explains that all claims of the '828 Patent are linked to substantially the same abstract idea as Claim 15, but merely recited from different network perspectives. Dkt. 26 at 21, n.17, 29 n.21. IV's only argument quotes two claim limitations, but does not argue for the validity of any other claim or present any meaningful argument for the "distinctive significance" of its quoted limitations. *Erie*, 2017 WL 5041460, at *5. This does not rebut Defendants' assertion that Claim 15 is representative. And, in any event, the quoted limitations are analogous to limitations in claims that this District has held abstract. *CCE*, 2017 WL 2984074 at *3 (finding claim reciting "determin[ing] the power headroom by subtracting the nominal maximum transmission power and the power that the apparatus would use if it did not apply maximum power limitations" as patent ineligible).

### IV.    CONCLUSION

T-Mobile and Sprint respectfully request that the Court grant their Motion.

---

[10] Claim 15 does not satisfy the machine-or-transformation test as IV contends, because that claim recites a generic "UE" and "wireless network." *Erie*, 2017 WL 5041460, at *6 (holding "general computer components" as insufficient under the machine-or-transformation test).

Dated:  January 17, 2018

Respectfully submitted,

KEKER, VAN NEST & PETERS
LLP

By:*/s/ Melissa R. Smith*
ASIM M. BHANSALI
R. ADAM LAURIDSEN
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

Melissa R. Smith
(Tex. Bar Id. 24001351)
melissa@gillamsmithlaw.com
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  903.934.8450
Facsimile:  903.934.9257

Attorneys for Defendants
T-MOBILE USA, INC. and
T-MOBILE US, INC.


 */s/ Robert W. Weber*
Jason W. Cook
Lead Attorney
McGuireWoods LLP
2000 McKinney Avenue
Suite 1400
Dallas, TX 75201
Telephone: 214-932-6400
Facsimile: 214-273-7483
jcook@mcguirewoods.com

David E. Finkelson
George B. Davis
McGuireWoods LLP
Gateway Plaza
800 East Canal St.
Richmond, VA 23219
Telephone: 804-775-1000
Facsimile: 804-225-5377

dfinkelson@mcguirewoods.com
gdavis@mcguirewoods.com

Robert W. Weber
Texas State Bar No. 21044800
E-mail: bweber@smithweber.com
**SMITH WEBER, L.L.P.**
5505 Plaza Drive
Texarkana, TX  75503
TEL:  903-223-5656
FAX:  903-223-5652


ATTORNEYS FOR SPRINT
SPECTRUM L.P. AND NEXTEL
OPERATIONS, INC.




## <u>CERTIFICATE OF SERVICE</u>


I hereby certify that counsel of record who are deemed to have consented to electronic

service are being served this 17th day of January, 2018, with a copy of this document via the

Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/ Melissa R. Smith*