# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, § § *Plaintiff*, § § v. § §| | |
| SPRINT SPECTRUM L.P., NEXTEL OPERATIONS, INC., ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, and ALCATEL-LUCENT USA INC., | § § § § § § | Civil Action No. 2:17-cv-662-JRG LEAD **JURY TRIAL DEMANDED** |
| T-MOBILE USA, INC., T-MOBILE US, INC., ERICSSON INC., and TELEFONAKTIEBOLAGET LM ERICSSON, *Defendants*. | § § § § § § | Civil Action No. 2:17-cv-661-JRG **JURY TRIAL DEMANDED** |

## AGREED E-DISCOVERY ORDER

The Court ORDERS as follows:

1. This order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This order may be modified in the court's discretion or by agreement of the parties. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference. If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

- 2 -

4.  For ESI, each of the metadata and coding fields set forth below that can be extracted shall be produced for that document.  The parties are not obligated to populate manually any of the fields identified in this paragraph if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CONFIDENTIALITY, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct. However, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process.

5. Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

> A. **General Document Image Format.** Each electronic document shall be produced in single-page Relativity-compatible Group IV Tagged Image File Format ("TIFF") format images and associated multi-page text files containing extracted text or OCR'd. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension.  Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.
>
> B. **Native Files.** Files such as spreadsheets, database files, and audio-visual files shall be produced in native format, rather than as a TIFF file. A party that receives a document produced as a TIFF file may make a reasonable request to receive the document in its native

format, and upon receipt of such a request, the producing party shall produce the document in its native format.

C. **Illegible Documents.** The parties will accommodate reasonable requests for production of legible copies of specific documents previously produced as a TIFF file.

D. **Color Documents.** No party has an obligation to produce documents in color; however, the parties will accommodate reasonable requests for production of specific images in color.

E. **Footer.** Each document image shall contain a footer with a sequentially ascending production number.

F. **Translations.** No party has an obligation to translate its foreign-language documents into English; however the parties shall produce any existing English language translations of production documents, whether or not created specifically for this case.

G. **No Backup Restoration Required.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

H. **Data That Need Not Be Preserved.** Absent a showing of good cause, the following categories of documents are deemed not reasonably accessible and need not be collected and preserved: (1) Deleted, slack, fragmented, or other data only accessible by forensics; (2) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; (3) On-line access data such

as temporary internet files, history, cache, cookies, and the like; (4) Data in metadata fields that are frequently updated automatically, such as last opened dates; (5) Back-up data that are substantially duplicative of data that are more accessible elsewhere; (6) Voice messages; (7) Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging; (8) Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere; (9) Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere; (10) Logs of calls made from mobile devices; (11) Server, system or network logs; (12) Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; (13) Data remaining from systems no longer in use that is unintelligible on the systems in use; (14) Data and documents on non-functioning or malfunctioning computers, or in a format that is unintelligible on systems or software currently in use by the parties; (15) Archives of the parties' websites; data or documents on non-traditional hardware, such as personal digital assistants ("PDAs"), mobile phones, smartphones, external media and thumb drives; (16) Voicemail, instant message or chat sessions, automated disaster recovery backup systems and/or disaster recovery backup tapes; and (17) Data and documents hosted on social media platforms such as Twitter, Facebook, etc.

I.  Documents shall be produced on optical media (e.g., CD or DVD), external hard drives, readily accessible computer(s), or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001", "VOL002"). Each piece of production media shall also identify:

>   (1) the Producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure order of this court, shall not include e-mail or other forms of electronic correspondence (collectively "e-mail"). To obtain e-mail, parties must propound specific e-mail production requests.  To the extent a party believes that email will contain relevant, non-duplicative information after considering the documents produced from non-email custodial and non-custodial sources, the parties agree that, before requesting any emails, they will meet and confer in good faith as to the need for email discovery and the identification of custodians. If the parties, after conferring in good faith, are unable to agree on the need or scope for email discovery, the parties shall submit their competing proposals to the Court in accordance with the Court's discovery dispute procedures.

7. If the parties agree that certain email discovery will contain relevant, non-duplicative information after considering the documents produced from non-email custodial and non-custodial sources, then email production requests may be made.  E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, a specific identification of the ten most significant listed e-mail custodians in view of the pleaded claims and defenses,[1] infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages. Each requesting party may also

---

[1] A "specific identification" requires a short description of why the custodian is believed to be significant.

propound up to five written discovery requests and take one deposition per producing party to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. The written discovery requests and deposition shall not count against the discovery limitations contained with the Discovery Order entered in this case. The court may allow additional discovery upon a showing of good cause.

8. E-mail production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame. Each requesting party shall limit its e-mail production requests to a total of eight custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case.

9. Each requesting party shall limit its e-mail production requests to a total of ten search terms per custodian per party. Any inventor names and patent numbers of the asserted patents may be included in the search terms by request, and will not count against the total of ten search terms per custodian. The parties may jointly agree to modify this limit without the court's leave. The court shall consider contested requests for additional or fewer search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or

"system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

10. Email attachments shall be produced sequentially after the parent email.

11. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

12. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

13. Except as expressly stated, nothing in this order affects the parties' discovery obligations under the Federal or Local Rules.

**So Ordered this**
**Feb 16, 2018**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE