**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-662-JRG |
| | § | |
| SPRINT SPECTRUM L.P, | § | LEAD CASE |
| NEXTEL OPERATIONS, INC., | § | |
| ERICSSON INC., | § | JURY TRIAL DEMANDED |
| TELEFONAKTIEBOLAGET LM ERICSSON, | § | |
| and ALCATEL-LUCENT USA INC. | § | |
| | § | |
| *Defendants*. | § | |
| _____ | § | |
| INTELLECTUAL VENTURES II LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 2:17-cv-661-JRG |
| | § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | JURY TRIAL DEMANDED |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON | § | |
| | § | |
| *Defendants*. | § | |

**THE T-MOBILE AND SPRINT DEFENDANTS' RESPONSE TO PLAINTIFF
INTELLECTUAL VENTURES' OPENING SUPPLEMENTAL BRIEF IN OPPOSITION
TO THE T-MOBILE AND SPRINT DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.   The Federal Circuit's *Berkheimer* and *Aatrix* Cases ................................................ 1

II.  The Challenged Patents Remain Patent Ineligible After *Berkheimer* and *Aatrix* ................... 3

   A.   The '330 and '357 Patents Remain Patent Ineligible ......................................... 3

     i.   The Claims Remain Directed to an Abstract Idea ...................................... 3

     ii.  The Challenged Claims Still Lack an Inventive Concept ............................... 5

     iii.   The Court Can Dismiss These Patents without Claim Construction ......................... 7

   B.   The '018 and '466 Patents Remain Patent Ineligible ......................................... 8

     i.   The Claims Remain Directed to an Abstract Idea ...................................... 8

     ii.  The Challenged Claims Still Lack an Inventive Concept ............................... 9

   C.   The '828 Patent Remains Patent Ineligible ................................................ 12

     i.   The Claims Remain Directed to an Abstract Idea ...................................... 12

     ii.  The Challenged Claims Still Lack an Inventive Concept ............................... 13

   D.   *Berkheimer* Confirms Defendants' Representative Claim Analysis ............................. 15

III. Conclusion ................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cᴀꜱᴇꜱ

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)...................................................................................... *passim*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)..............................................................................1, 2, 4, 8, 13

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
    No. 2017-1494, 2018 WL 935455 (Fed. Cir. Feb. 16, 2018) ...................................................1

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................................... *passim*

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    No. 17-cv-05928-YGR, 2018 WL 1610690 (N.D. Cal. Apr. 3, 2018) ..............................6, 11

*Cellular Commc'ns Equip. LLC v. AT&T Inc.*,
    No. 2:15-cv-00576-RWS-RSP, 2017 WL 2984074 (E.D. Tex. June 27, 2017)...................5, 6

*Clear with Computers, LLC v. Altec Indus., Inc.*,
    Case No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) .........................................14

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
    880 F.3d. 1356 (Fed. Cir. 2018)...................................................................................4, 5

*Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*,
    No. 2017-1795, 2018 WL 985918 (Fed. Cir. Feb. 20, 2018) ...................................................1

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    711 Fed. App'x 1012 (Fed. Cir. 2017)....................................................................4, 7, 8, 15

*Maxon, LLC v. Funai Corp.*,
    No. 2017-2139, 2018 WL 1719101 (Fed. Cir. Apr. 9, 2018) ...................................................1

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)....................................................................................................1

*SAP Am., Inc. v. InvestPic, LLC*,
    No. 2017-2081, 2018 WL (Fed. Cir. May 15, 2018)...............................................................1

*Voter Verified, Inc. v. Election Sys. & Software*,
  No. 2017-1930, 2018 WL 1882917 (Fed. Cir. Apr. 20, 2018) ............................................1, 13

## I.      The Federal Circuit's *Berkheimer* and *Aatrix* Cases

The two-step framework for analyzing patent eligibility is well established.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  At Step 1, the Court determines whether the claim is "directed to" an abstract idea.  *Id.* at 2356.  At Step 2, the Court considers the claim limitations individually and as an ordered combination to determine if the claim recites "significantly more" than the abstract idea itself.  *Id.* at 2355.  Merely reciting "well-understood, routine, [and] conventional activity" is not enough to transform an abstract idea into an inventive concept.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 79-80 (2012).

This Court's Order (Dkt. 115) requires the parties to address the impact of recent Federal Circuit precedent—such as the *Berkheimer* and *Aatrix* decisions—on Defendants' Motion to Dismiss.  Neither *Berkheimer* nor *Aatrix* alters the *Alice* framework or the patent ineligibility of the challenged claims.  Instead, these cases reaffirm that patent eligibility is a question of law that a court may decide on a Rule 12 motion to dismiss.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365, 1368 (Fed. Cir. 2018); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  "Patent eligibility has in many cases been resolved on motions to dismiss . . . [and] [n]othing in [the *Berkheimer*] decision should be viewed as casting doubt on the propriety of those cases."  *Berkheimer*, 881 F.3d at 1368.  Indeed, *every* post-*Berkheimer*/*Aatrix* Federal Circuit decision addressing eligibility at the Rule 12 stage has affirmed a district court's dismissal. *SAP Am., Inc. v. InvestPic, LLC*, No. 2017-2081, 2018 WL (Fed. Cir. May 15, 2018); *Voter Verified, Inc. v. Election Sys. & Software*, No. 2017-1930, 2018 WL 1882917 (Fed. Cir. Apr. 20, 2018); *Maxon, LLC v. Funai Corp.*, No. 2017-2139, 2018 WL 1719101 (Fed. Cir. Apr. 9, 2018); *Integrated Tech. Sys., Inc. v. First Internet Bank of Indiana*, No. 2017-1795, 2018 WL 985918 (Fed. Cir. Feb. 20, 2018); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, No. 2017-1494, 2018 WL 935455 (Fed. Cir. Feb. 16, 2018).

1

In *Berkheimer*, the Federal Circuit applied the two-step *Alice* framework and held four of eight claims patent *ineligible*. *Berkheimer*, 881 F.3d at 1369.  At *Alice* Step 1, the court rejected the patentee's argument that the claims were rooted in technology and held that all eight claims were directed to the abstract idea of "parsing and comparing data." *Id.* at 1367.  In doing so, the Federal Circuit confirmed that limiting an abstract idea to a certain technological environment cannot save a claim at Step 1. *Id.*  At *Alice* Step 2, the patentee argued that all eight claims included an inventive concept because the specification described two purported improvements to computer functionality: (1) "reducing redundancy;" and (2) "enabling one-to-many editing." *Id.* at 1368. Though the parties disputed whether those improvements were captured in the claims, the Federal Circuit decided as a matter of law that four of the claims did not recite an inventive concept. *Id.* at 1369.  Importantly, the Federal Circuit reasoned that improvements described in the specification only create a factual dispute "to the extent they are captured in the claims," and those four challenged claims did not recite limitations capturing the described improvements. *Id.*

In *Aatrix*, the Federal Circuit—without addressing Step 1—addressed whether the patentee's complaint created a fact dispute precluding dismissal at Step 2. *Aatrix*, 882 F.3d at 1126-27.  There, the Federal Circuit found that the complaint contained "concrete allegations" of fact related to the inventive concept described in the specification and *captured in the claims*. *Id.* at 1128.  The Federal Circuit held that those allegations created a fact dispute over whether the limitations were well-understood, routine, or conventional at *Alice* Step 2. *Id.*

The challenged claims here remain abstract at Step 1 after *Berkheimer* and *Aatrix*.  As explained in Defendants' Motion, each of IV's broad and generic claims is analogous to claims held abstract in multiple other cases.  These claims bear hallmarks of abstract claims, such as functionally reciting limitations without any detail of *how* the results are achieved. *Berkheimer*

and *Aatrix* do not alter the Step 1 analysis of the challenged claims, as the *Berkheimer* court held all claims abstract and the *Aatrix* court did not substantively address the claims at Step 1.

With respect to Step 2, the challenged claims still lack an inventive concept after *Berkheimer* and *Aatrix*. Like the claims held ineligible in *Berkheimer*, the claims here do not capture the purported improvements that IV relies upon. Those purported improvements relate to unclaimed embodiments and most are not even described in the specification. As a result, those improvements cannot create a fact dispute at Step 2 under *Berkheimer*. And, the distinguishable *Aatrix* case cannot save IV's claims. Unlike what the Federal Circuit found to be "concrete factual allegations" related to the claimed inventive concept in *Aatrix*'s complaint, IV's Complaint only includes its infringement allegations without including any concrete factual allegations relating to any claimed inventive concepts.

## II.     The Challenged Patents Remain Patent Ineligible After *Berkheimer* and *Aatrix*

### A.     The '330 and '357 Patents Remain Patent Ineligible

#### i.     The Claims Remain Directed to an Abstract Idea

Representative Claim 26 is directed to the abstract idea of monitoring for an indicator that includes instructions for receiving information. Dkt. 26 at 4. Claim 26's two-step method of "monitoring" for and "receiving" information is analogous to claims that the Federal Circuit and this Court have held abstract. *Id.* at 5-6. Claim 26 also bears hallmarks of abstract claims. *First*, Claim 26 functionally recites "monitoring" and "receiving" without explaining how those results are accomplished. *Id.* at 6. *Second*, the claim is analogous to the long-prevalent practice of monitoring for a communication on one channel that instructs a group of listeners to go to a different channel for more communications and receiving the additional communications on the indicated channel. *Id.* at 7. *Berkheimer* supports this conclusion, as the Federal Circuit held all

3

claims abstract in that case.  *Supra*, at 1-2.[1]

IV's brief largely regurgitates its original briefing and, in doing so, repeats many of the same errors.  *First*, IV's arguments about the PTO's allowance and "differences between the prior art and the claims" conflate novelty with eligibility.  The Federal Circuit has consistently rejected that argument.  *See, e.g.*, *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 711 Fed. App'x 1012, 1019 (Fed. Cir. 2017).  *Second*, IV's arguments conflate the Step 1 inquiry with the Step 2 inquiry. Step 1 asks whether the claims are directed to an abstract idea, not whether the claims are conventional.  In any event, IV fails to identify any specific purported factual dispute.  *Third*, IV's arguments that Defendants provided "numerous opinions" and an "unsupported view" of what was conventional are unsupported, as confirmed by IV's failure to provide any cite for those arguments.

IV also cites to *Core Wireless*—without any substantive analysis—to argue that Defendants' have violated that case's purported prohibition against over-generalizing claims.  Dkt. 126 at 7 (citing *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d. 1356 (Fed. Cir. 2018)).  In *Core Wireless*, the claims were lengthy and recited specific details of a user interface. *Id.* at 1362.  The court held that the claims were not abstract, because they recited an "improved user interface," as confirmed by the specification's description of the problems with prior art interfaces and how the claimed concepts improved upon the prior art.  *Id.* at 1362-63.

*Core Wireless*, however, is factually distinguishable for three reasons.  *First*, unlike the lengthy and detailed claims in *Core Wireless*, IV's Claim 26 is a broad, two-step claim that generically recites, for example, monitoring for "downlink transmissions" and receiving "a transmission."  *Second*, the *Core Wireless* defendant's alleged abstract idea distilled a lengthy

---

[1] *Aatrix* did not address whether the claims met *Alice* Step 1 and thus does not inform the Step 1 inquiry here.  *Id.*

claim into a single word, *id.* at 1362, whereas Defendants' alleged abstract idea captures the core concept of a short claim without oversimplifying it. *Third*, unlike the *Core Wireless* specification's description of the problems that the claimed invention solved, the common '330 and '357 Patent specification does not describe any problems with the conventional paging procedure.[2]

### ii.    The Challenged Claims Still Lack an Inventive Concept

Representative Claim 26 of the '330 Patent does not recite an inventive concept. Dkt. 26 at 7-9.  Beyond the abstract idea itself, the claim recites only generic and conventional activities and computer components that cannot transform the abstract idea into an inventive concept.  For instance, Claim 26 recites a two-step paging procedure that mirrors the two-step paging procedure the specification admits is "conventional." *Id.* at 2-3, 7-9.  Like Claim 26, the specification describes that the conventional procedure first monitors for a signal that includes an indication of a page message and then receives a second paging signal. '330 Patent at 2:5-29.  The "UE" recited in Claim 26 is admittedly used in the conventional paging procedure.  *Id.*  The claim's generic, high-level recitation of "an indication of a shared channel" does not change this result.  Rather, that element merely adds a piece of information to a "conventional" paging message, and cases have established that appending a generic piece of information to a conventional signal does not supply an inventive concept.  Dkt. 26 at 8 (citing *Cellular Commc'ns Equip. LLC v. AT&T Inc.*, No. 2:15-cv-00576-RWS-RSP, 2017 WL 2984074, at *1 (E.D. Tex. June 27, 2017)).  The combination of elements does not recite an inventive concept, because it recites the same conventional ordering and steps used in the conventional paging procedure. *Id.* at 10-11.

*Berkheimer* does not change this result.  Though IV's Step 2 analysis does not rely on them, IV's "Technical Background" section asserts that the specification describes two "improvements"

---

[2] IV incorrectly asserts that Claim 26 of the '330 Patent is the only challenged claim.  Claim 26 is representative of all claims in the '330 and '357 Patents.  All claims in those patents are challenged.

over the conventional paging procedure: (1) periodic monitoring; and (2) flexibility in transmitting the second paging message.  Dkt. 126 at 5.  However, like the claims held ineligible in *Berkheimer*, Representative Claim 26 does not capture either of IV's purported improvements.  *Berkheimer*, 881 F.3d at 1369 (holding that improvements in the specification do not create a Step 2 factual dispute unless they are captured in the claims).

*First*, Claim 26 does not recite using "periodic monitoring."  Rather, the claim generically recites "monitoring" for downlink transmissions without any further limitation on *how* that monitoring is performed.  And, IV does not provide any explanation or support in the intrinsic record for why "monitoring" is limited to "periodic monitoring."  Even if the claim recited "periodic monitoring," that feature is not an inventive concept.  The specification describes using periodic monitoring in the admittedly "conventional" two-stage paging procedure.  '330 Patent at 2:5-29 (describing use of "Discontinuous Reception (DRX) in sleep mode").  The "conventional" paging procedure's use of discontinuous reception (DRX) is identical to the use of DRX in the patent's "Implementation 3" relied upon by IV.  *Id.* at 7:3-5.  And the conventional paging procedure uses the periodic monitoring of DRX for the same purpose that IV identifies as the alleged inventive improvement—to "reduce power consumption."  *Id.* at 2:13-15.

*Second*, Claim 26 does not recite "flexibility in transmitting the second paging message." The claim does not even recite sending a "second paging message," but rather recites that a generic "transmission" is received on the indicated shared channel.  *Id.* at 12:64-65.  Nor does the specification describe IV's purported improvement.  Even after *Berkheimer* and *Aatrix*, courts continue to reject reliance on alleged improvements not described in the specification.  *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 17-cv-05928-YGR, 2018 WL 1610690, at *9 (N.D. Cal. Apr. 3, 2018) (citing *Cellular Commc'ns Equip.*, 2017 WL 2984074, at *4 n.1).  Although IV argues that the

flexibility stems from Claim 26's "indication of a shared channel" (Dkt. 126 at 4), nothing in the specification describes that claim feature as providing any flexibility in transmitting a paging message or any other technological improvement.  The specification also does not describe any problems with the conventional paging procedure's "fixed time offset" that IV argues the "indication of a shared channel" solved.  '330 Patent, 2:5-29; '357 Patent, 1:64-2:20.  Tellingly, IV fails to offer any citation for the purported problems IV identifies with the "fixed time offset" (i.e., inefficiency and unreliability caused by signal fading and interference).  Dkt. 126 at 5.

IV does not contend that *Aatrix* affects this analysis, nor could it.  Unlike what the Federal Circuit found to be "concrete factual allegations" related to the claimed inventive concept in *Aatrix*'s complaint, IV's Complaint only includes its infringement allegations without reciting any concrete factual assertions relating to a claimed inventive concept.  *Aatrix*, 882 F.3d at 1127-28; Dkt. 1 at ¶¶ 40-54, 107-121.  Allowing IV to add such allegations would be futile, because the allegations would not be captured in the patent claims.

IV's sole assertion of a factual dispute at Step 2—that the PTO allowed the claims—again conflates novelty with patent eligibility.  *Erie Indemnity Co.*, 711 Fed. App'x at 1019 (rejecting argument that PTO's allowance of claims based on certain limitations rendered those limitations inventive at Step 2).  If IV's argument were correct, then no court could ever grant a Rule 12 motion because a factual dispute would exist for every allowed patent.  Neither *Aatrix* nor *Berkheimer* sanction such a result.  *Supra*, at 1-2.

### iii.      The Court Can Dismiss These Patents without Claim Construction

IV largely rehashes its claim construction arguments from the parties' joint letter brief.  As Defendants already explained in that brief, IV does not offer any proposed constructions or explain how its constructions affect the § 101 analysis.  In any event, IV's supplemental brief confirms that construction is unnecessary to decide Defendants' Motion.  IV argues that Defendants' have

too ***narrowly*** construed a "signal to indicate a page . . . derived from a radio network temporary identifier (RNTI)."[3]  If, as IV contends, the term should be more ***broadly*** construed, then the claim is even more ineligible than it already is.  IV's argument regarding the "monitoring" step deviates from IV's "plain and ordinary meaning" assertion in the joint letter brief.  Regardless, as noted above, the "monitoring" that IV contends is done at "particular paging occasions" is described as part of the "conventional paging procedure" in the specification.  Thus, IV's construction would not impact the *Alice* analysis even if adopted.

**B.      The '018 and '466 Patents Remain Patent Ineligible**

**i.      The Claims Remain Directed to an Abstract Idea**

Representative Claim 6 is directed to the abstract idea of ordering allocation of resources based on numeric rankings of parameters.  Dkt. 26 at 13.  Claim 6 is analogous to claims held abstract in this Court, the Federal Circuit, and the Supreme Court.  *Id.* at 13-15.  And, Claim 6 can be performed mentally using pen and paper, confirming the abstractness of the claim.  *Id.* at 15-16.  IV largely recycles its original briefing without citing any recent case law or explaining how that law impacts the Motion.  That is understandable, given that *Berkheimer* only counsels *in favor* of abstractness at Step 1, and *Aatrix* did not even address the claims at Step 1.

IV cites to the Supreme Court's 2010 *Bilski* case—which goes well beyond the scope of the Court's Order—to present a one-sentence machine-or-transformation argument.  But, "post-*Alice*, [the machine-or-transformation test] is no longer sufficient to render a claim patent-eligible."  *Erie Indemnity Co.*, 711 Fed. App'x at 1019 (internal citations omitted).  In any event, the test is not satisfied here.  Claim 6 merely recites generic computer components, such as a "user equipment," "a network device," and "a processor" that cannot satisfy the test.  *Id.* (holding

---

[3] Defendants' Motion did not construe that term implicitly or explicitly.

reliance on "general computer components" insufficient under the machine-or-transformation test). And, IV does not explain what is transformed in Claim 6.

IV's argument that there is a claim construction dispute over "allocating" does not preclude dismissal. Dkt. 126 at 10. Even assuming Defendants have implicitly construed the term, IV does not provide its own construction or explain how such a construction is material to the patent eligibility analysis. And, regardless, Defendants have not implicitly construed the term, as the abstract idea tracks the claim language's requirement of allocating resources to one channel "prior to" another channel. '466 Patent at 14:47-50. This articulation of the abstract idea maps directly to IV's own characterization of the claim. Dkt. 65 at 5-6.

### ii.    The Challenged Claims Still Lack an Inventive Concept

The vast majority of Defendants' arguments that Representative Claim 6 of the '466 Patent lacks an inventive concept remain undisputed by IV. *See* Dkt. 26 at 16-19; Dkt. 61 at 20-22; Dkt. 65 at 6-7; Dkt. 73 at 5-6. In sum, Claim 6 performs the abstract idea using generic components— a "processor" and a "network device"—that courts have held do not add an inventive concept. Dkt. 26 at 16-17; *see also* '466 Patent at 6:18-23 (generically describing a UE), and 13:11-19 (admitting that the inventive concept may be implemented in any suitable form). The "receiving" step is "not even arguably inventive," and the "allocating" step is directed to the abstract idea itself. Dkt. 26 at 17-18. The combination of elements does not add anything "not already present when the steps are considered separately." *Id.* at 19; *see also* '466 Patent at 13:44-49 (admitting that the order of the steps is not an inventive concept). Thus, Claim 6 lacks an inventive concept.

IV's only claim to an inventive concept—that allocation is performed on a UE as opposed to a base station—suffers from several flaws that preclude any Step 2 fact disputes. *First*, the specification's admissions refute IV's claim to an inventive concept. *Aatrix*, 882 F.3d at 1125 (stating that plausible factual allegations may preclude dismissal if "nothing on th[e] record . . .

refutes those allegations as a matter of law"). At the outset, the specification admits that allocating resources to a user occurs in a "*conventional* cellular communication network," including in the "most ubiquitous" network at the time. '466 Patent at 1:54-58, 1:59-65. That admission does not differentiate between where the allocating is performed. The specification then directly refutes IV's allegation that where functionality occurs is part of the inventive concept: "*any suitable distribution of functionality* between different functional units or logic elements may be used *without detracting from the inventive concept*." '466 Patent at 13:3-6.[4] IV cannot contradict these admissions to create a factual dispute.

*Second*, IV relies on alleged improvements that are not captured in the claims. *Berkheimer*, 881 F.3d at 1369 (holding that improvements in the specification do not create a Step 2 factual dispute unless they are captured in the claims). The three passages cited in IV's Step 2 analysis relate to unclaimed embodiments, and do not relate to a UE performing its own allocation. The first passage—and the only one IV cites as supporting its purported inventive concept—relates to prioritization using "weighting logic" that provides "weight values" for each "service across a plurality of users." Dkt. 126 at 11 (citing '018 Patent at 4:1-19). This passage describes operation at the base station (operating *across a plurality of users*), not operation at an individual UE. And, importantly, Claim 6 does not recite any of those concepts. For instance, Claim 6 is performed by a single "*UE*" and does not even reference prioritizing services "across *a plurality of users*," let alone "weighting logic" and "weight values." The other two passages IV cites also relate to unclaimed embodiments. '018 Patent at 12:22-24 (method to limit the number of queues allocated resources at any one time), 12:25-33 (prioritization of packet types across users). Even IV's

---

[4] The paragraph in which this statement appears does not reference "ASIC hardware, software, and firmware" as IV contends. Rather, the statement broadly refers to the "functionality" described in the specification, as the location of such "functionality" is admittedly not the inventive concept.

citations regarding purported distinctions and improvements over prior art are not related to where the allocation is performed. *Id.* at 4:14-19 (contrasting prioritization schemes, not where the allocation occurs), 12:34-46 (contrasting based on prioritizing packet types across users, not based on where allocation occurs). Under *Berkheimer*, these passages do not create a fact dispute, because they relate to concepts not captured in Claim 6. *Berkheimer*, 881 F.3d at 1369.

*Third*, IV's alleged improvements lack specification support. *Cellspin*, 2018 WL 1610690, at *9 (rejecting reliance on improvements not described in the specification). Although IV argues that the inventive concept "allow[s] the phone to perform its own uplink allocation using minimal input data, to achieve an efficient allocation as network needs vary" (Dkt. 126 at 11), nothing in the specification describes any technological improvements attributable to allocating resources on a UE as opposed to a base station.[5]  IV's sole citation ('018 Patent at 4:1-19) in support of that purported improvement has nothing to do with allocating resources on a phone, let alone "using minimal input data" or "achiev[ing] efficient allocation as network needs vary." *Supra*, at 10. The specification also does not describe any problems with allocating resources on a base station. *See, e.g.*, *id.* at '466 Patent at 1:54-3:15, 12:50-62. And, when describing the "inventive concept," the specification lists four concepts without listing allocating resources on a UE instead of on a base station. *Id.* at 12:28-49. Thus, the patentee did not describe the invention as IV now does.

IV does not contend that *Aatrix* affects this analysis, and that makes sense. Unlike what

---

[5] Though IV's Step 2 analysis does not rely on the argument, IV's "Technical Background" section misrepresents that the specification establishes that prior art systems "transmitted separate allocation messages for each user/radio bearer, thereby consuming precious frequency bandwidth and time slots." Dkt. 126 at 9 (citing 4:14-19 and 10:19-24 of the '018 Patent). To the contrary, 4:14-19 merely states that the 3GPP standard provides a "conventional" absolute priority scheme as opposed to using weighting logic. And, 10:19-24 is not even describing the prior art, but rather a problem arising when an "SLA" is split into multiple radio bearers. The disclosed solution—to "limit a total number of queues served" (10:25-27)—is unclaimed.

the Federal Circuit found to be "concrete factual allegations" related to the inventive concept in *Aatrix*'s complaint, IV's Complaint only includes its infringement allegations without reciting any concrete factual assertions relating to a claimed inventive concept.  *Aatrix*, 882 F.3d at 1127-28; Dkt. 1 at ¶¶ 92-105, 123-137.  And amending would not help IV, because the intrinsic record contradicts the inventive concept IV now advances.  *Aatrix*, 882 F.3d at 1125.

**C.     The '828 Patent Remains Patent Ineligible**

**i.     The Claims Remain Directed to an Abstract Idea**

Representative Claim 15 is directed to the abstract idea of selectively calculating a transmit power level based on feedback from the receiver and/or the transmitter's own measurements.  This abstract idea is consistent with IV's own characterization of the claim: "Claim 15 requires dynamic adjustment of the UE 'transmit power' based on (1) 'TPC commands' received from the network; and/or (2) determination of 'path loss.'" Dkt. 65 at 8.  Claim 15 is analogous to claims held abstract in this Court, the Federal Circuit, and the Supreme Court.  Dkt. 26 at 22-25.  Claim 15 also bears two hallmarks of abstract claims, as the claim functionally recites its limitations and is analogous to longstanding human behavior performed mentally.  *Id.* at 25-26.  Recent Federal Circuit case law does not impact this conclusion, as *Berkheimer* found abstractness at Step 1 and *Aatrix* did not address whether the claims satisfied Step 1.  *Supra*, at 1-2.

IV's rehashed arguments presented in its supplemental brief fail for three reasons.  *First*, IV suggests that there are disputed factual assertions that preclude a finding of abstractness, Dkt. 126 at 12-13, but the Federal Circuit has never found Step 1 includes a question of fact.  *Second*, even if Step 1 did include a question of fact (which it does not), IV does not raise any material factual disputes that would preclude dismissal.  IV's disagreement about whether a human can perform the claim is not a factual dispute.  *Id.*  The Federal Circuit, both before and after *Berkheimer*, has held claims abstract at the 12(b)(6) stage where they can be performed by a

human.  *See, e.g.*, *Voter Verified*, 2018 WL 1882917, at *7.  IV's other purported factual dispute—that "path loss" is not "measured on a single instrument"—is a strawman.  Dkt. 126 at 12-13.  Regardless, IV does not explain how that purported dispute is material to the § 101 analysis.  *Third*, IV's arguments hinge on unclaimed concepts.  For example, IV contends that the claim deals with "time slots, bandwidth, frequency, and code divisions," but none of these concepts are claimed.

### ii.    The Challenged Claims Still Lack an Inventive Concept

Representative Claim 15 does not recite an inventive concept.  The only additional elements beyond the abstract idea merely recite generic computer technology performing conventional activities specified at a high level of generality.  For instance, Claim 15 recites generic components—"a wireless network" and "a user equipment (UE)"—for which the specification provides no real description other than that they are used with widely prevalent 3GPP standards.  '828 Patent at 5:16-50.  Courts have already held that those components do not add an inventive concept.  Dkt. 26 at 26-27.  The "sending" and "receiving" steps are "not even arguably inventive."  *Id.* at 27.  The "determining" step recites well-understood and admittedly conventional activity, and courts have held that analogous limitations do not supply an inventive concept.  *Id.* at 28.  The "calculating" step is a basic computer function performed in an admittedly conventional way, as the specification describes that wireless systems "often employ[ed]" a calculation based on TPC commands.  *Id.*  All the "calculating" step does is add a conventional piece of information (path loss) to an admittedly conventional calculation.  That does not add "significantly more" to the abstract idea and cannot supply an inventive concept.  *Alice*, 134 S. Ct. at 2355.[6]

---

[6] IV's argument that Defendants have discounted "meaningful" limitations rehashes old arguments, and Defendants already explained why those limitations do not supply an inventive concept.  Dkt. 126 at 13-14; Dkt. 26 at 26-29.  Regardless, except "transmit power" and "receiving . . . a TPC command" (both of which the specification admits are conventional), the limitations IV contends are "meaningful" were not even in the original claims, undermining IV's assertion that they supply the inventive concept.  Ex. 8 at 22.

*Berkheimer* does not help IV.   IV's alleged inventive concept—"a combined open loop/closed loop scheme for dynamically controlling UE transmit power in a wireless network to improve the quality of wireless communication"—relies on concepts that are not recited in the claim.   *See Berkheimer*, 881 F.3d at 1369.   Nowhere does Claim 15 recite anything about "dynamically" controlling transmit power or "improv[ing] the quality of wireless communication."   Even if the claim recited "dynamically" calculating transmit power, this Court has held that "dynamically" performing an action does not add an inventive concept.   *Clear with Computers, LLC v. Altec Indus., Inc.*, Case No. 6:14-cv-79, 2015 WL 993392, at *4 (E.D. Tex. Mar. 3, 2015) (holding that "dynamically building a template" did not add an inventive concept).

Moreover, the purported improvements that IV relies upon are attributable to an unclaimed embodiment.   *Berkheimer*, 881 F.3d at 1369.   Representative Claim 15 recites a method that calculates "transmit power" in two ways: (1) a combined loop scheme (i.e., based on both "the path loss and the accumulated TPC commands," '828 Patent at 14:53-56); and (2) an open loop scheme (i.e., based on "path loss," *id.* at 14:57-61).   IV added the second way to the claim after it was unable to get a claim that recited calculating transmit power using only the combined loop scheme.   Ex. 6, p. 2 (reciting claim rejected on appeal); Ex. 9 at 2 (canceling original claims and adding new claims that included both combined loop and open loop).   The alleged improvements that IV cites relate to an unclaimed embodiment that uses ***only*** combined loop without also using open loop (i.e., the first way described above).   Dkt. 126 at 13-14 (citing '828 Patent at 4:11-34, 7:64-8:3, 11:43-12:54, Figs. 5A-5C); Dkt. 65 at 9.   None of the alleged improvements is attributable to Claim 15's use of ***both*** the combined loop scheme ***and*** the open loop scheme.

IV does not even cite *Aatrix* in its analysis of the '828 Patent, and for good reason as IV's Complaint only includes its infringement allegations without reciting any concrete factual

assertions relating to an inventive concept. *Aatrix*, 882 F.3d at 1127-28; Dkt. 1 at ¶¶ 56-68.  Any amendment to add inventive concept assertions to its Complaint would be futile, because, as noted above, the claims do not capture IV's purported improvements.[7]

### D.   *Berkheimer* Confirms Defendants' Representative Claim Analysis

In *Berkheimer*, the Federal Circuit reaffirmed that "[c]ourts may treat a claim as representative . . . if the ***patentee*** does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer*, 881 F.3d at 1365.  There, the patentee identified limitations in other claims that differed from the limitations in the representative claim ***and*** explained why those limitations recited patent eligible concepts. *Id.*  Here, IV repeats its old arguments for each of the three patent groups without explaining how any recent case law impacts the Motion.  Dkt. 61 at 7-8, 16-17, 22.  Defendants have already explained that the limitations do not alter the § 101 analysis.  Dkt. 65 at 4-5, 7-8, 10.  Regardless, unlike in *Berkheimer*, IV identifies different limitations without explaining why those limitations recite patent eligible concepts.  This is not a "meaningful argument for the distinctive significance" of any identified claim limitations.[8]  *Berkheimer*, 881 F.3d at 1365.

### III.   Conclusion

The challenged patents remain patent ineligible after *Berkheimer* and *Aatrix*.  There are no Step 2 fact disputes that preclude granting Defendants' Motion.  No amendment to IV's Complaint can save the claims because they do not capture the alleged inventive concepts that IV now argues.

---

[7] IV's suggestion that the PTO's allowance of the claims precludes dismissal again conflates novelty and patent eligibility.  *Erie Indemnity Co.*, 711 Fed. App'x at 1019.

[8] If the Court holds independent Claims 1, 15, and 29 of the '828 Patent ineligible but finds that those claims are not representative of the dependents, the Court may still dismiss IV's Count on the '828 Patent since IV only identified Claims 1, 15, and 29 in its Complaint and did not dispute that Claim 15 is representative of Claims 1 and 29.  *See Automated Tracking*, 2018 WL 935455, at *2 n. 3.

DATED:  May 15, 2018                    Respectfully submitted,

*/s/  Jason W. Cook (with permission)*     */s/  Melissa R. Smith*
Jason W. Cook (Lead Attorney)          Melissa R. Smith
Texas State Bar No. 24028537           Texas State Bar No. 24001351
Email:  jcook@mcguirewoods.com         Email:  melissa@gillamsmithlaw.com
MCGUIREWOODS LLP                       **Gillam & Smith, L.L.P.**
2000 McKinney Avenue, Suite 1400       303 South Washington Avenue
Dallas, Texas 75201                    Marshall, Texas 75670
Telephone: (214) 932 6400              Telephone: (903) 934-8450
Facsimile: (214) 932 6499              Facsimile:  (903) 934-9257

David E. Finkelson                     Douglas M. Kubehl
State Bar No. 44059                      Texas State Bar No. 00796909
Email:  dfinkelson@mcguirewoods.com      Email:  doug.kubehl@bakerbotts.com
Andriana S. Daly                       Jeffery S. Becker
State Bar No. 80930                       Texas State Bar No. 24069354
Email:  adaly@mcguirewoods.com               Email:  jeff.becker@bakerbotts.com
George B. Davis                        Harrison G. Rich
State Bar No. 83165                       Texas State Bar No. 24083730
Email:  gdavis@mcguirewoods.com              Email:   harrison.rich@bakerbotts.com
MCGUIREWOODS LLP                       Steven T. Jugle
800 East Canal Street                    Texas State Bar No. 24083280
Richmond, Virginia 23219-3916            Email:  steven.jugle@bakerbotts.com
Telephone: (804) 775-1000              Megan V. LaDriere
Facsimile: (804) 698-2016                Texas State Bar No. 24083348
                                         Email:  melissa.butler@bakerbotts.com
Robert W. Weber                        Melissa L. Butler
Texas State Bar No. 21044800             Texas State Bar No. 24097442
Email:  bweber@smithweber.com            Email:   melissa.butler@bakerbotts.com
Smith Weber LLP                        **Baker Botts L.L.P.**
5505 Plaza Drive                       2001 Ross Avenue
P.O. Box 6167                          Dallas, Texas 75201
Texarkana, Texas 75505                 Telephone: (214) 953-6500
Telephone: (903) 223-5656              Facsimile: (214) 953-6503
Facsimile: (903) 223-5652

***Counsel for Defendants***           Asim M. Bhansali
***Sprint Spectrum L.P. and***         State Bar No. 90001290
***Nextel Operations, Inc.***          Email:  abhansali@kblfirm.com
                                       **KWUN BHANSALI LAZARUS LLP**
                                       4 Embarcadero Center, Suite 1400
                                       San Francisco, California, 94111
                                       Telephone: (415) 630-2350

R. Adam Lauridsen
  State Bar No. 243780
  Email:  alauridsen@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

***Counsel for Defendants***
***T-Mobile USA, Inc., T-Mobile US, Inc.***

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 15, 2018.


*/s/ Melissa R. Smith*