**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO.  2:17-CV-00577-JRG |
| | § | |
| v. | § | |
| | § | |
| T-MOBILE USA, INC., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO.  2:17-CV-00662-JRG |
| | § | LEAD CASE |
| v. | § | |
| | § | |
| T-MOBILE USA, INC., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO.  2:17-CV-00661-JRG |
| | § | CONSOLIDATED MEMBER CASE |
| v. | § | |
| | § | |
| SPRINT SPECTRUM L.P., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**ORDER DENYING DEFENDANTS' MOTIONS TO TRANSFER VENUE**
**PURSUANT TO 28 U.S.C. § 1404**

Before the Court are various motions to transfer venue to the District of Delaware filed by

Defendants in the above-captioned cases.  (2:17-cv-00577, Dkt. No. 37; 2:17-cv-00662, Dkt. No.

70; 2:17-cv-00661, Dkt. No. 46) (collectively, "the Motions").  Each Motion is brought pursuant

to 28 U.S.C. § 1404(a).  The Court heard argument on the Motions on June 19, 2018, wherein the Parties addressed the commonalties between the Motions and identified for the Court any points of difference between the Motions.  (2:17-cv-00577, Dkt. No. 104; 2:17-cv-00662, Dkt. No. 147; 2:17-cv-00661, Dkt. No. 58).  Having considered the Motions, the Court is of the opinion that each Motion should be **DENIED** for the reasons set forth herein.  Given the commonality spanning these Motions, the Court first addresses the -577 Motion, (Dkt. No. 37), in its entirety, then addresses the points of difference in the -662 and -661 Motions, none of which warrant reaching a different ultimate conclusion.

## I.    LEGAL STANDARD

If venue in the district in which the case is originally filed is proper, the court may nonetheless transfer a case based on "the convenience of parties and witnesses" to another district where the case could have been brought. 28 U.S.C. § 1404(a).  The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'" (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957))).  For purposes of § 1400(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521.  None of the moving Parties question whether venue here is proper.  In fact, all moving Parties recognize the propriety of venue in this District.

Once the initial threshold of proving the proposed transferee district is one where the suit might have properly been brought is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected by the defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the moving defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.*; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'"); *id.*

3

at 908 (transfer under § 1404 is mandated where venue is "far more convenient and fair.").   Absent

such a showing, however, the plaintiff's choice is to be respected.   *Volkswagen II*, 545 F.3d at

314–15.

## II.  DISCUSSION (-577 MOTION)

Both Parties agree that the threshold issue of proper venue in the proposed transferee

district, the District of Delaware, has been met.   (Dkt. No. 37 at 8; Dkt. No. 43 at 5 ("[T]here is no

dispute that the case could have been brought in either venue.")).   The Court agrees and,

accordingly, proceeds to the analysis of the private and public factors considered in analyzing the

interests of justice under § 1404.

### A.  Private Factors

#### i.   *Relative Ease of Access to Sources of Proof*

In considering the relative ease of access to proof, a court looks to where documentary

evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. For

this factor to weigh in favor of transfer, Defendants must show that transfer to the District of

Delaware will result in more convenient access to sources of proof.   *See Diem LLC v.*

*BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

T-Mobile USA, Inc. ("TMO") spends most of its brief arguing that a single private factor,

judicial economy, predominates the transfer analysis.   (Dkt. No. 37 at 8 ("Judicial Economy

renders the District of Delaware the Clearly More Convenient Forum")).   This factor is fully

addressed below, but is mentioned here because once it moves beyond its arguments on judicial

economy, TMO admits that "the remaining private interest factors are neutral."   (*Id*. at 11).   TMO

argues that, as to this first factor, "[i]n the recent -1671 Delaware Litigation, most of the documents

produced from individual custodians came from custodians located in Sweden, Canada, and

Washington" and that "consistent with the prior litigation, that the vast majority of the relevant evidence (including the majority of technical documents) will come from Ericsson's Stockholm, Sweden and Ottawa, Canada facilities, some evidence will come from T-Mobile and IV-I in Bellevue, Washington, and little relevant evidence will come from Plano." (*Id*. at 12).   TMO argues that the evidence from Sweden and Washington will have to travel regardless and should be afforded little weight, while the evidence located in Ottawa "need only travel about 465 miles to Delaware, as opposed to about 1,600 miles to Marshall." (*Id*.)

Intellectual Ventures I LLC ("IV") notes first that TMO "concedes that in the 1671 Litigation, many of the documents were produced from custodians located in districts other than Delaware." (Dkt. No. 43 at 8 (citing Dkt. No. 37 at 12)).   IV also argues that "[t]he majority of evidence in this case will be produced electronically to opposing counsel, regardless of its origin," and thus neither venue "will materially impact the parties' access to proof." (*Id*. (citing *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112-JRG, 2012 WL 1570136 at *5-6 (E.D. Tex. May 3, 2012) (noting that where evidence is not in either forum, this factor does not favor transfer)) and *E. Texas Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017 WL 2859065, at *2 (E.D. Tex. Feb. 15, 2017) ("[T]his factor may be accorded less weight if the documents are in, or can be converted into easily-transportable electronic form.")).   However, "[d]espite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered." *Implicit v. Trend Micro*, No. 6:16-cv-00080-JRG, 2016 U.S. Dist. LEXIS 191571, at *5 (E.D. Tex. Sep. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316).   Accordingly, the physical location of sources of proof is properly considered by this Court in this analysis and will be so considered.[1]

---

[1] As this Court has previously noted, venue analysis is concerned *only* with the presentation of evidence *at and during trial*, not, as IV appears to argue, related to the pre-trial discovery process. *AGIS Software Dev. LLC v. Huawei Device*

Regardless, IV has identified a major repository of proof within this District.  Defendant

Ericsson Inc.'s U.S. Headquarters is within this District.  "T-Mobile fails to note that all of

Ericsson's source code was produced and made available for inspection in its counsel's Texas

office" and there is "no reason to believe that Ericsson will now make its source code repository

available in another location."  (Dkt. No. 43 at 8).  "Moreover, because Ericsson is now a

defendant, rather than an intervenor, IV expects to take extensive discovery of Ericsson's

activities, and its U.S. headquarters is right here in the District."  (*Id.*)

TMO argues that the "source code inspection occurred at counsel's offices in Texas

because that is where the parties agreed to produce it for inspection, not because that is where the

source code is maintained," (Dkt. No. 53 at 4 (citing Dkt. No. 53-3 at 27 (protective order from

1671 litigation identifying "[t]he stand-alone secure computer system(s) [for source code

inspection] shall be located at the United States offices of the Producing Party's Outside Litigation

Counsel, or other mutually-agreed upon location.")))).  While TMO did not identify where the

source code *is* maintained in the briefing, (*see* Dkt. No. 57 at 2), TMO clarified at oral argument

that "[such] code, however, had to be transferred from Sweden to get here."  (Hr'g Tr. at 4:10–

11).  IV's argument that "it might live in Sweden but . . . access has been made here in Texas," is

to no avail.  (*Id.* at 27:22–23).  Just as shuffling of resources pre-suit in an attempt to alter venue

is disapproved of,[2] so to, then, must post-filing litigation conveniences be ignored in the venue

---

*USA Inc.*, No. 2:17-CV-00513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("[T]he inquiry regarding access to sources of proof correlates to production and presentation to the jury at trial." (citing *Volkswagen II*, 545 F.3d at 316)); *accord Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient *place of trial*.") (emphasis added). The same principle holds true for consideration of documentary evidence under the first factor, i.e., bringing physical materials to the Court for exhibition before the factfinder. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (considering only "physical and documentary evidence" in analyzing the first factor).

[2] *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *4 (E.D. Tex. Jan. 23, 2012) (citing *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011) ("recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a)

analysis.  This conclusion is necessitated by the requirement that "whether transfer is appropriate is determined at the time of filing."  *Am. Vehicular Scis. LLC v. Toyota Motor Corp.*, 2014 U.S. Dist. LEXIS 93642, at \*14 (E.D. Tex. July 10, 2014) (citing *Jones v. Cooper*, 2009 WL 4823837, at \*3 (W.D. La. Dec. 14, 2009) (citing *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998))).

Even so, while this removes Ericsson's source code from consideration (its location being Sweden and thus, inconvenient everywhere), it does not undermine IV's identification of Ericsson's U.S. headquarters in Plano, Texas.  As IV notes, "Ericsson is a named defendant, and as the principal supplier of the accused base stations, there is likely to be substantial discovery of documents and witnesses in Ericsson's U.S. headquarters based in Plano, Texas. Ericsson has filed no declarations or supporting evidence denying the availability of evidence here, and Ericsson has made ample use of this district in pursuing claims for infringement on its own patents."  (Dkt. No. 57 at 1).

The existence of this major source of proof within this District, especially in light of TMO's failure to identify a single source of proof residing in the District of Delaware, is properly dispositive in the Court's analysis on this issue.  Accordingly, the Court finds that primary sources of proof may be found in this District, and none are found in the proposed transferee district.  While many other sources of proof may be found in other districts or forums, they do not weigh heavily on this consideration due to their distance, and thus inconvenience, from either this District or the proposed transferee district.  Even when noting the generally heavier evidentiary burden with which defendants carry in patent infringement lawsuits,[3] when taking into account the location of

---

analysis."); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010)).

[3] "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal citation omitted).

primary sources of proof of a named defendant within this District, the Court finds that this factor weighs against transfer.

ii.   *Availability of Compulsory Process*

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

TMO argues that "Defendants do not expect there will be relevant non-parties that would be subject to either court's subpoena power," and that this factor is, therefore, neutral. (Dkt. No. 37 at 13). IV argues that "T-Mobile has not identified any specific non-party witnesses who would need to be subpoenaed in Delaware, so this factor weighs against transfer." (Dkt. No. 43 at 8). The Court is of the opinion that a factor which does not reach any witnesses identified by either

8

party is properly considered to be neutral and does not weigh in the transfer analysis.[4]  According, this factor is neutral.

### iii.   Cost of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as other courts applying Fifth Circuit venue law have noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

---

[4] To the extent that IV was attempting to argue that neutral factors cut against transfer, such is implicit in the overall evaluation of the factors which require a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *See In re Apple Inc.*, 456 Fed. Appx. at 909 (a movant must "meet its burden of demonstrating [ ] that the transferee venue is 'clearly more convenient.'"); *id.* at 908 (transfer under § 1404 is mandated where venue is "far more convenient and fair.").

While TMO states that "the [non-judicial economy] private interest factors are neutral," (Dkt. No. 37 at 11), it nonetheless argues one page later that "on balance, the cost of attendance for willing party witnesses favors transfer." (*Id*. at 12).   Pointing again to the -1671 litigation, TMO argues that IV produced 6 fact witnesses for deposition, all of whom were deposed in Washington and California.   (*Id*.)   Ericsson and T-Mobile produced 14 fact witnesses for deposition, 8 located in Stockholm, 3 in Ottawa, 2 in Washington, and 1 in Plano.  (*Id*.)   As such, TMO argues, the District of Delaware will be more convenient for multiple witnesses in Ottawa and neutral for numerous additional witnesses in Washington and Stockholm and the single witness who was deposed in this District in the previous case should not be considered since there is "no indication" they will testify at trial or be involved in this case.  (*Id*.)

IV notes that "T-Mobile fails to identify any witnesses located in Delaware whom it expects to testify," and that witnesses residing in Sweden and Canada will face significant cost and travel time to the United States, no matter the venue, as will TMO personnel are based outside of Seattle.  (Dkt. No. 43 at 6–7).  Further, "Ericsson witnesses are based in this District and in Sweden or Canada, and Ericsson can scarcely complain about being required to bring witnesses to its principal place of business in the U.S." (*Id*. at 7).  Finally, and of importance, there is a non-party witness, the inventor, Mr. Jorgenson, "who resides in Folsom, California, which is more than 900 miles closer to Marshall, Texas than it is to Wilmington, Delaware." (*Id*.)

TMO argues that Mr. Jorgenson's inconvenience should be of little consideration since "a paid consultant is presumptively willing to travel." (Dkt. No. 53 at 4).  However, every witness considered under this factor is presumptively willing to travel.  The factor is "the cost of attendance for *willing witnesses*." *Volkswagen I*, 371 F.3d at 203 (emphasis added).  Unwilling witnesses are not considered under this factor; they are necessarily considered under the second factor, which

examines the Court's compulsive subpoena power.  It is true that party witnesses' inconvenience is discounted in this analysis, as noted above, but a discounted factor is not disregarded. Additionally, Mr. Jorgenson is not a party witness.  He is a non-party witness, and non-party witnesses' convenience is of special concern. "While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-0134-JRG-RSP, 2017 U.S. Dist. LEXIS 26755, at \*17 (E.D. Tex. Feb. 27, 2017) (citations omitted); *see also Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012) ("[I]t is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis.") (citation omitted).

Even if the Court were to consider Mr. Jorgenson's "consulting" status as removing him from non-party status, and it does not, this Court has recently examined the propriety of considering expert witness convenience and found the general approach throughout the Fifth Circuit to afford even expert witnesses some weight. *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-cv-00516-JRG, 2018 WL 2721826, at \*6 (E.D. Tex. June 6, 2018) (surveying district court precedent throughout the Fifth Circuit).  A consultant inventor is entitled to greater consideration as they are not hired *specifically* for their litigation testimony, like experts, who are hired with the expectation that they will make themselves available at trial.  An inventor, by contrast, is perpetually associated with their invention, both before, during, and after litigation, giving additional credibility to the Court's consideration of Mr. Jorgenson as a non-party witness.

The Court finds that the inconvenience experienced by the Swedish, Washington, and California based party witnesses are of little weight and generally cancel each other out.  The Court

11

does not disregard the inconvenience experienced by the Ottawa witnesses, but finds their party status to materially discount their consideration in the evaluation of this factor.  Mr. Jorgenson's non-party status and the inconvenience he would face attending trial in Delaware when compared to this District weighs heavily in the analysis.  Even so, on balance, the Court determines that this factor weighs only slightly against transfer.

 *iv. All Other Practical Problems*

 This factor is the crux of TMO's Motion.

 TMO argues that "judicial economy renders the District of Delaware the clearly more convenient forum."  (Dkt. No. 37 at 8).  This factor "weighs strongly in favor of the District of Delaware, and presents good cause to transfer this case."  (*Id.*)

 In support of this assertion, TMO argues that "Delaware's Chief Judge Stark has presided over multiple (and all) cases where [IV] has asserted a Jorgensen Patent against T-Mobile's use of Ericsson LTE base stations."  (*Id.* at 9).  Because of this, TMO argues, Chief Judge Stark has become "familiar with the asserted family of patents, the accused LTE technology, T-Mobile's network, Ericsson's LTE base stations, and the legal and factual issues underlying these patents and the accused technology," over the "five-year pendency of the Delaware cases."  (*Id.*) Specifically, TMO points to Chief Judge Stark's "multiple claim construction rulings," and his "resol[ution of] numerous complex case management issues, including discovery, protective order, and privilege disputes."  (*Id.* at 9–10).

 IV responds that Chief Judge Stark's familiarity reaches only two (the '674 and the '248 patents) of the 28 patents asserted in the prior Delaware litigations.  (Dkt. No. 43 at 9).  Further, the currently asserted patents possess "key distinctions" from the previously asserted patents.  (*Id.*) While, for example, the '674 patent "focuses entirely on methods to protect vulnerable

transmissions from security threats by applying security protocols (e.g., encryption and authentication) to data packets," the patents-in-suit here claim no security protocols. (*Id.*)  Instead, these patents teach "methods and systems for efficiently and reliably transmitting IP flows over a shared wireless telecommunications network with limited resources."  (*Id.*)  Similarly, while the '248 patent "claims a system for optimizing the quality of service ("QoS") for a device serving multiple user-facing applications," related patents-in-suit "optimize QoS requirements associated with an IP flow, which is not user-facing" while others do not claim optimization at all.  (*Id.* at 10).  IV urges that "the fact that the '248 and '674 patents share the same inventor as the Patents-in-Suit is of no consequence in view of these technical differences."  (*Id.*)

Indeed, IV does not assert any of the same patents it previously asserted in Delaware.  In its opening brief, TMO did not identify a case which found any judicial economy where the proposed transferee district had previously evaluated a different patent than the patent at issue in the transferor venue.

None of this matters, according to TMO.  "Chief Judge Stark is intimately familiar with the voluminous disclosure shared by all Jorgensen patents," and, having previously construed the term "optimize end-user QoS," and the identical description of "optimizing," he is in the best position to "efficiently resolve the parties' dispute[s]," especially those related to the Parties' dispute over the term "optimizing." (Dkt. No. 53 at 2).  Further, as to the issue of different patents being at issue, TMO cites *MAZ Encryption Techs., LLC v. BlackBerry Ltd.*, which found judicial economy to favor transfer, even where there were different patents at issue as the technology at issue was the same and the patents shared a common disclosure and a common inventor, finding a likelihood that various issues common to the two cases would overlap. 6:15-cv-1167-RWS-JDL, 2016 WL 9275009, at *2, *5 (E.D. Tex. July 14, 2016).

13

TMO urges this Court afford judicial economy "'paramount consideration,' 'even if the convenience factors call for a different result,'" attempting to quote *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010).  (Dkt. No. 53 at 2).  However, TMO's asserted juxtaposition misstates the holding of *In re Vistaprint*.[5, 6]  And the Federal Circuit has since *explicitly rejected* giving co-pending cases such substantial weight.  Indeed, this Court has explicitly noted this previously, explaining that "certain cases warn against giving excessive weight" to consideration of co-pending cases in evaluating judicial economy under § 1404.  *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 U.S. Dist. LEXIS 155586, at *22 (E.D. Tex. Sep. 22, 2017) (citing *In re Google, Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017)); *see also In re Google*, 2017 WL 977038, at *3 ("[W]e observe that it is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple

---

[5] The full text of the relevant portion reads:

> In sum, there are cases where to hold a trial court to a meaningful application of the § 1404(a) factors presents only one correct outcome. In those cases, mandamus may be appropriate. A case such as this, however, shows that a meaningful application of the factors often creates a reasonable range of choice. Under such circumstances, it is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of "paramount consideration," Volkswagen II, 566 F.3d at 1351, and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result.[3]
>
> [3] *Our holding today does not mean that, once a patent is litigated in a particular venue the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that venue*. However, where, as here, the [transferor court] performed a detailed analysis explaining that it is very familiar with the only asserted patent and the related technology, and where there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, we cannot say the trial court clearly abused its discretion in denying transfer.

628 F.3d at 1347 (emphasis added).

[6] To the extent that TMO believes that *In re Dell Inc.* commands a different result or somehow buttresses its naked reliance on judicial economy alone, in that case, the Circuit noted, *inter alia*, that the district court had *proceeded through Markman and pre-trial practice and conducted a jury trial and post-verdict motions practice and was, simultaneously, considering a separate case involving the same patent and underlying technology* in finding judicial economy was sufficient to *not have abused its discretion*.  600 F. App'x 728, 730 (Fed. Cir. 2015).  The factual circumstances in this case are far afield and *In re Dell* does not reach these facts.

co-pending suits, while the remaining defendants have similar transfer motions pending seeking transfer to a common transferee district.").

TMO argues that "there is not a strong showing of convenience in favor of this District that outweighs the compelling interest in judicial economy," (Dkt. No. 53 at 3), but this turns the § 1404 analysis on its head.  TMO would have this Court consider judicial economy in a vacuum and then declare "game over."   However, the proper § 1404(a) analysis is *guided* by the factors, each consideration ensuring the totality of the circumstances surrounding the interests of justice and the convenience of the parties is fully explored *before* the district court determines the final result.

Having considered both Parties' arguments on the judicial economy factor, the Court finds that there are certainly some reasons to believe that transfer of this case to Chief Judge Stark may result in judicial economy.  However, these projected economies are not sufficient to warrant considering that no contrary result can result.  Indeed, there is reason to expect that either this Court or Chief Judge Stark would be required to do substantially the same amount of work in addressing this case.  First, in the Parties exchanged claim constructions, there is only one overlapping claim term between this case and the prior Delaware litigation.[7]  Further,  there is a dispute between the Parties as to whether that term is different in these patents-in-suit from those addressed by Chief Judge Stark previously.[8]  Additionally, Chief Judge Stark's consideration of the '674 patent in the prior litigation was limited due to a stay pending IPR proceedings involving that patent, resulting in his only substantive involvement being his construction of two terms of that patent, neither of which appear in the patents-in-suit.[9]

---

[7] (Hr'g Tr. at 21:15).
[8] (*Id*. at 21:16–18).
[9] (Dkt. No. 43 at 4).

15

Far more remains to be done.  From dispositive motions beyond the *Markman* stage to conducting trial, any court which handles this case will traverse many paths not yet trod by any jurist.  In short, the Court finds that while some economies may be gained from transfer to the proposed transferee court, the judicial economy factor, while weighing in favor of transfer, does not dominate the analysis or result in "game over."

## B. Public Factors[10]

### i.  *Administrative Difficulties Flowing From Court Congestion*

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  TMO argues that "[b]oth the Eastern District of Texas and the District of Delaware have local patent rules to efficien[tly] adjudicate patent disputes," and that "Chief Judge Stark's familiarity with the patents, technology, parties, and issues in this case offsets any concern that may otherwise exist with respect to court congestion" making this factor "neutral."  (Dkt. No. 37 at 14).

IV argues that the median time from filing to jury trial for patent cases over the past five years favors this District over the District of Delaware by "well over a year."  (Dkt. No. 43 at 13).  IV notes further that "the Delaware court is groaning under the burden of the Supreme Court's decision in *TC Heartland*" with a near doubling of patent filings in that District requiring emergency measures to address the District's docket.  (*Id*.)  IV points to "one [emergency] judge recently transferr[ing] a case out of Delaware, stating: 'While neither party addresses this factor, we do because this District is now reduced to two active district court judges with judges from other busy districts sitting as visiting judges to help address the busy docket until new district court

---

[10] TMO argues that every public factor is neutral.  (Dkt. No. 37 at 14 ("The Public Interest Factors Are Neutral.")).

judges are sworn.'"  (*Id.* (citing *MEC Res., LLC v. Apple, Inc.*, No. CV-17-223, 2017 WL 4102450, at *5 (D. Del. Sept. 15, 2017)).

The Court finds that this factor clearly weighs against transfer.[11]

    *ii.*   *Local Interest in Having Localized Interests Decided at Home*

TMO argues that "[t]he dispute in this case does not emanate from the Eastern District of Texas, because the allegedly infringing activity occurs throughout the United States" and, as such, there are no local interests since the interests suffuse throughout the Nation.  (Dkt. No. 37 at 14 (citing *In re Nintendo*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)).  TMO also points to IV's representations in the past, based upon its incorporation in Delaware, in opposing § 1404 transfers *from* Delaware, that "Delaware is [IV's] 'home turf.'"  (Dkt. No. 37 at 15 (citing *Intellectual Ventures I LLC v. Altera Corp.*, 10-1065-LPS, Dkt. 66 at *1)).

In response, IV argues that incorporation alone is not sufficient to render Delaware a locale with a "true local interest in the subject matter of this dispute or the parties."  (Dkt. No. 43 at 14).  IV further points to Ericsson and TMO's "significant physical presences in this [D]istrict" including "Ericsson's U.S. headquarters . . . in Plano, and [TMO's] major facilities in and around Plano."  (*Id.*)

There can be little doubt that this District has a local interest in the disposition of any case involving a resident corporate party. Given Ericsson's domestic principal place of business in this District, it is a resident.  *In re BigCommerce, Inc.*, No. 2018-120, 2018 WL 2207265, at *5 (Fed. Cir. May 15, 2018) (holding that "the judicial district where the principal place of business is

---

[11] The Court notes TMO's Reply arguments relating to average weighted filings and general (non-patent) case disposition timings.  These are not helpful in evaluating the current state of congestion in both this Court and the brethren court in Delaware, especially not when the presented information includes outdated bases and does not account for the post-*TC Heartland* landscape of patent litigation.  Accordingly, the Court does not find TMO's arguments persuasive.

located" is the district in which it "resides" for venue purposes in a multi-district state).  This holding from the Federal Circuit also appears to indicate that venue should focus on the presence of a principal place of business over place of incorporation where they compete.  *Id.* (holding that place of incorporation (the registered office) should be considered only where an attempt to locate the residency of a corporation based on principal place of business "fail[s]".)

Accordingly, because none of the Parties have their principal places of business in Delaware but one named Defendant's principal place of business, and thus its residence, is within this District, this factor weighs against transfer.

> iii.  *Familiarity of the Forum with Governing Law*

The Parties agree that this factor is neutral.  (Dkt. No. 37 at 14; Dkt. No. 43 at14).  The Court agrees and finds this factor to be neutral.

> iv.  *Avoidance of Unnecessary Conflicts of Law*

The Parties agree that this factor is neutral.  (Dkt. No. 37 at 14; Dkt. No. 43 at 15).  The Court agrees and finds this factor to be neutral.

### C.  Conclusion

Having considered the relevant factors,[12] the Court is of the opinion that TMO has not met its significant burden to show that the asserted transferee district is "clearly more convenient."  *In re Apple Inc.*, 456 F. App'x at 909.  For the reasons stated above, the Court hereby **DENIES** Defendants' Motion to Transfer Venue (Dkt. No. 37).

## III. DISCUSSION (-662 AND -661 MOTIONS)

---

[12] Summary of factor holdings: (i) access to proof: "weighs against transfer"; (ii) availability of compulsory process: "neutral"; (iii) cost and attendance for willing witnesses: "slightly against transfer"; (iv) practical problems: "favors transfer"; (v) court congestion: "clearly weighs against transfer"; (vi) local interest: "weighs against transfer"; (vii) familiarity with the law: (agreed) neutral; (viii) conflict of laws: (agreed) neutral.

The Court now turns to analysis of the 2:17-cv-00662 Motion to Transfer Venue, (Dkt. No. 70), and the 2:17-cv-00661 Motion to Transfer Venue, (Dkt. No. 46).

At argument, the Court specifically inquired as to the differences between the various cases such that they were deserving of specific consideration beyond that conducted in the -577 case.[13] Defendant argued for both the -662 lead case and the -661 consolidated member case together.[14] The Court, accordingly, considers both together now.

The patents-in-suit in the -662 and the -661 were argued to be similarly related to the prior Delaware litigation.[15] Even supposing that the patents-in-suit were as similar to the patents-in-suit in the -577 case, the evaluation of the judicial economy factor does not change. Accordingly, the Court need not revisit that factor.[16]

Moving on, TMO argued that in the -662 and -661 cases, the presence of prosecution counsel for five of the six patents in these cases is in Philadelphia, within the subpoena power of the District of Delaware and beyond the subpoena power of this Court. On consideration of this additional fact, the second factor in the § 1404 analysis must be revisited as to the -662 and -661

---

[13] (Hr'g Tr. at 33:2–10 ("THE COURT: Let me ask you this, and I don't mean this -- let me just say no pun is intended -- but with regard to these remaining other two motions, and in the interest of efficiency, what else is there in these other two motions to transfer under 1404 that would distinguish them from the motion that we just argued in the '577 case. If there are distinguishing factor, I need to know about them. If they're not, then I'll assume that they're pretty much common.")).

[14] (Hr'g Tr. at 34:23–25 ("THE COURT: When you say in this case, are you talking about the 661 or 662 or both. MR. KUBEHL: In both.")).

[15] (Hr'g Tr. at 33:11–18 ("MR. KUBEHL: . . . First, just briefly, the commonality between the patents, looking at Slide 11 here, on the left-hand side, we have the Speight patents that are at issue in this case. They are not continuations of each other but they do have common subject matter that Judge Stark has specifically analyzed and that will be relevant to this case."); *Id.* at 34:18–22 ("With respect to the Li patents, the asserted claims 41 patent, the Li patent, it's a direct continuation of a previous Li patent which Judge Stark did a claim construction on and found claim terms to be indefinite and invalid.")).

[16] Ironically, having determined the -577 case should not be transferred, the same judicial economy which TMO previously argued should "predominate" would weigh against it in consideration of this case. Of course, as discussed above, the Federal Circuit forbids just such a use and result and so the Court does not consider the judicial economy resulting from the presence of the co-pending -577 litigation in this District, but merely notes the irony commanded by Federal Circuit guidance.

cases. The Court finds this factor to weigh in favor of transfer, as opposed to its finding of neutrality in the -577 case.

Even so, on balance and having considered all of the factors in the -662 and -661 cases independently, the Court does not find that TMO has met its significant burden to show that the asserted transferee district is "clearly more convenient." *In re Apple Inc.*, 456 F. App'x at 909. For the reasons identified above, and in conjunction with the findings detailed as to the -577 case, the Court hereby **DENIES** Defendants' Motions to Transfer Venue (2:17-cv-00662, Dkt. No. 70; 2:17-cv-00661 Dkt. No. 46).

## IV.   FINAL CONCLUSION

Having addressed all Motions before the Court regarding the transfer of venue such three Motions to Transfer are hereby **DENIED**.

**So ORDERED and SIGNED this 29th day of June, 2018.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE