**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § § | Civil Action No. 2:17-CV-662-JRG (LEAD CASE) |
| SPRINT SPECTRUM L.P., NEXTEL OPERATIONS, INC., ERICSSON INC., TELEFONAKTIEBOLAGET LM ERICSSON, and NOKIA OF AMERICA CORPORATION, | § § § § § § § § | JURY TRIAL DEMANDED |
| *Defendants*. | § | |
| v. | § § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., ERICSSON INC, TELEFONAKTIEBOLAGET LM ERICSSON, and NOKIA OF AMERICA CORPORATION, | § § § § § § § | Civil Action No. 2:17-CV-661-JRG (CONSOLIDATED CASE) |
| *Defendants*. | § | |
| v. | § § | |
| NOKIA OF AMERICA CORPORATION, | § § § | |
| *Intervenor*. | § § | |

## T-MOBILE USA, INC., AND T-MOBILE US, INC.'S ███████ ANSWER AND COUNTERCLAIMS TO IV'S COMPLAINT

Defendants T-Mobile USA, Inc., and T-Mobile US, Inc. ("the T-Mobile Defendants")

hereby file this Answer to Plaintiff Intellectual Ventures II LLC's, ("IV" or "Plaintiff") Complaint

filed on September 9, 2017 ("Complaint") (Dkt. 1).[1]  The T-Mobile Defendants deny all allegations

---

[1] This answer from the T-Mobile Defendants is to IV's Complaint filed in Case Number 2:17-CV-661-JRG, which has been consolidated with Case Number 2:17-CV-662-JRG.

in the Complaint unless specifically admitted herein.  The T-Mobile Defendants reserve the right to raise additional defenses and counterclaims based on discovery and further factual investigation in this case.  The T-Mobile Defendants state as follows:

## THE PARTIES

1.      The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 1 of the Complaint, and therefore deny them.

2.      The T-Mobile Defendants admit that T-Mobile USA, Inc. is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

3.      The T-Mobile Defendants admit that T-Mobile US, Inc. is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.  The T-Mobile Defendants admit that T-Mobile US, Inc. was previously known as MetroPCS Communications, Inc. and that MetroPCS Communications, Inc. was acquired in 2013.

4.      The T-Mobile Defendants admit that they operate one or more wireless telecommunications networks to provide wireless telecommunications services under brand names including T-Mobile and MetroPCS.

5.      The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 5 of the Complaint, and therefore deny them.

6.      The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 6 of the Complaint, and therefore deny them.

## NATURE OF ACTION

7.      The T-Mobile Defendants admit that the Complaint purports to pursue an action for patent infringement of U.S. Patent Nos. 8,682,357; 8,897,828; 8,953,641; 9,320,018; 9,532,330 and 9,681,466 (the "Asserted Patents") under the provisions of the Patent Laws of the United States of America, Title 35 of the United States Code.  The T-Mobile Defendants deny that the Complaint properly states such claims and specifically deny any infringement.

## JURISDICTION AND VENUE

8.      The T-Mobile Defendants admit that the Court has subject-matter jurisdiction over Plaintiff's claims for patent infringement.

9.      The T-Mobile Defendants do not challenge the Court's personal jurisdiction over the T-Mobile Defendants for purposes of this action.  The T-Mobile Defendants specifically deny that they have committed any acts of infringement in this or any other judicial district.  The T-Mobile Defendants deny any remaining allegations of Paragraph 9 of the Complaint.

10.      For purposes of this action only and without waiver to the T-Mobile Defendants' right to challenge venue in any other action, the T-Mobile Defendants do not contend that venue is improper in this judicial district.  For purposes of this action, the T-Mobile Defendants admit that T-Mobile US has an office at 2250 Lakeside Boulevard, Richardson, Texas, and that T-Mobile USA maintains a Network Operations Center at 7668 Warren Parkway, Frisco, Texas, both of which are located within this judicial district.  The T-Mobile Defendants admit that they operate at least one or more retail locations within this judicial district, and that subscribers may purchase wireless services and/or devices at such locations.  The T-Mobile Defendants deny any remaining allegations of Paragraph 10 of the Complaint.

11.     The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 11 of the Complaint, and therefore deny them.  The T-Mobile Defendants specifically deny that any Ericsson product or service used in T-Mobile's networks infringes any claim of any asserted patent in this action.

12.     The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations with respect to Ericsson contained in Paragraph 12 of the Complaint, and therefore deny them.  The T-Mobile Defendants deny the remaining allegations contained in Paragraph 12 of the Complaint.

13.     Paragraph 13 contains legal conclusions to which no response is required.  To the extent any response is required, the T-Mobile Defendants admit that Plaintiff does not assert that the Ericsson Defendants' activities with respect to any other wireless carrier or that any products or services of the Ericsson Defendants sold to other wireless carriers infringe any claim of any asserted patent in this case.  The T-Mobile Defendants deny the remaining allegations of Paragraph 13 of the Complaint.

14.     Whether the T-Mobile Defendants reside in this district is a legal conclusion to which no response is required.  To the extent a response is required, the T-Mobile Defendants admit that they employ employees in this district, but deny that the T-Mobile Defendants reside in this judicial district.  The T-Mobile Defendants also deny that this judicial district is the appropriate judicial district for resolution of this action.  However, for purposes of this action only and without waiver to the T-Mobile Defendants' right to challenge venue in any other action, the T-Mobile Defendants do not contend that venue is improper in this judicial district.  The T-Mobile Defendants specifically deny that they have committed any infringement with respect to the asserted patents in this action in this or any other judicial district.  The T-Mobile Defendants deny

the remaining allegations of Paragraph 14 of the Complaint as they pertain to the T-Mobile Defendants.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding the Ericsson Defendants in Paragraph 14, and therefore deny them.

## **PATENTS-IN-SUIT**

15.     The T-Mobile Defendants admit that, on its face, United States Patent 8,682,357 B2 ("the '357 Patent"), is entitled "Paging in a Wireless Network" and lists an issue date of March 25, 2014.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15 of the Complaint, and therefore deny them.

16.     The T-Mobile Defendants admit that, on its face, United States Patent 8,897,828 ("the '828 Patent"), is entitled "Power Control In A Wireless Communication System" and lists an issue date of November 25, 2014.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 16 of the Complaint, and therefore deny them.

17.     The T-Mobile Defendants admit that, on its face, United States Patent 8,953,641 ("the '641 Patent"), is entitled "Methods and Apparatus for Multi-Carrier Communications with Variable Channel Bandwidth" and lists an issue date of February 10, 2015.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 17 of the Complaint, and therefore deny them.

18.     The T-Mobile Defendants aver that the pleadings in the IPR proceedings regarding the '431 Patent speak for themselves and that the T-Mobile Defendants did not participate in the IPR proceedings, to which they were not a party.  Therefore, no response is required to the

allegations in Paragraph 18 of the Complaint, but to the extent any response is required, the T-Mobile Defendants refer to the answer of the Ericsson Defendants regarding the IPR proceedings, and to the extent any further response is required, deny the remaining allegations of Paragraph 18 of the Complaint.

19.     The T-Mobile Defendants admit that, on its face, United States Patent 9,320,018 ("the '018 Patent"), is entitled "Scheduling Data Transmissions in a Wireless Network" and lists an issue date of April 19, 2016.   The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining in Paragraph 19 of the Complaint, and therefore deny them.

20.     The T-Mobile Defendants admit that, on its face, United States Patent 9,532,330 ("the '330 Patent"), is entitled "Paging in a Wireless Network" and lists an issue date of December 27, 2016.   The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining in Paragraph 20 of the Complaint, and therefore deny them.

21.     The T-Mobile Defendants admit that, on its face, United States Patent 9,681,466 ("the '466 Patent"), is entitled "Scheduling Transmissions on Channels in a Wireless Network" and lists an issue date of June 13, 2017.   The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining in Paragraph 21 of the Complaint, and therefore deny them.

## FACTUAL BACKGROUND

### Intellectual Ventures

22.     The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 of the Complaint, and therefore deny them.

23.     The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23 of the Complaint, and therefore deny them.

24.     The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24 of the Complaint, and therefore deny them.

25.     The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25 of the Complaint, and therefore deny them.

### **The T-Mobile Network**

26.     The T-Mobile Defendants admit that they are in the business of providing wireless telephone services and access to a wireless network to customers in the United States, including Texas, under the T-Mobile and MetroPCS brands.  The T-Mobile Defendants admit that portions of its network employ LTE technology.  The T-Mobile Defendants deny the remaining allegations pertaining to the T-Mobile Defendants.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding the Ericsson Defendants in Paragraph 26 of the Complaint, and therefore deny them.

27.     The T-Mobile Defendants admit that, as disclosed in the T-Mobile Defendants' Form 10Q for 2017, the T-Mobile Defendants had 72.6 million subscribers total and, as disclosed in the T-Mobile Defendants' 10K for 2016, T-Mobile reported annual revenue of $ 27,844,000. The T-Mobile Defendants deny the remaining allegations of Paragraph 27 of the Complaint pertaining to the T-Mobile Defendants.

28.     The T-Mobile Defendants admit that they have purchased LTE equipment from one or more of the Ericsson Defendants, and that T-Mobile has purchased LTE equipment from companies other than Ericsson.  The T-Mobile Defendants deny the remaining allegations of Paragraph 28 of the Complaint as they pertain to the T-Mobile Defendants.

29.     The T-Mobile Defendants admit that they regularly test their LTE network and from time to time roll out upgrades and newer generations of wireless technology to their network. The T-Mobile Defendants deny the remaining allegations of this Paragraph 29 of the Complaint.

### T-Mobile's Vendor Partnerships

30.     The T-Mobile Defendants admit that in 2012 they selected Ericsson to provide some LTE equipment.  To the extent Plaintiff's allegations in Paragraph 30 of the Complaint go beyond what is admitted in the previous sentence, the T-Mobile Defendants deny the remaining allegations of this Paragraph 30 of the Complaint.

31.     The T-Mobile Defendants admit that Ericsson provides certain services to T-Mobile.  The T-Mobile Defendants admit that the webpage https://www.ericsson.com/en/press-releases/2017/1/t-mobile-and-ericsson-first-in-north-america-to-demonstrate-nearly-1-gbps-lte-over-the-air-on-commercially-available-network-equipment-and-software includes a sentence stating: "Ericsson's strong design and solution capabilities enable T-Mobile to deploy the most advanced LTE networks for its subscribers as it lays the groundwork for 5G."  The T-Mobile Defendants further admit that the webpage https://www.ericsson.com/en/news/2016/6/enhanced-hd-voice-for-volte-launched-by-t-mobile-and-ericsson includes the sentence: "With Ericsson's support, T-Mobile provides nationwide EVS support for VoLTE and Wi-Fi calling users, delivering even greater audio quality than current HD voice services, and better call reliability and quality across both T-Mobile's LTE network and Wi-Fi access." The T-Mobile Defendants

specifically deny IV's characterization of their relationship with Ericsson and further deny the remaining allegations of Paragraph 31 of the Complaint as they pertain to the T-Mobile Defendants.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding the Ericsson Defendants in Paragraph 31 of the Complaint, and therefore deny them.

32.    The T-Mobile Defendants deny all allegations of infringement contained in Paragraph 32 of the Complaint.    The T-Mobile Defendants admit that the webpage https://www.ericsson.com/en/press-releases/2017/2/ericsson-and-t-mobile-pioneering-superior-lte-network-capabilities-in-readiness-for-5g-deployments    includes    two    sentences    stating "Ericsson and T-Mobile have worked together on a network evolution plan and optimization path to continue to provide a superior user experience. The companies will continue to maximize the success of LTE and will prepare the network for evolution to 5G by implementing key technology enhancements included in 3GPP Release 13 and beyond."  The T-Mobile Defendants further admit that the webpage https://newsroom.t-mobile.com/news-and-blogs/nationwide-5g.htm states "We will support T-Mobile US with 5G radio development for this spectrum."    The T-Mobile Defendants deny IV's characterization of their relationship with Ericsson and further deny the remaining allegations of Paragraph 32 as they pertain to the T-Mobile Defendants.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations regarding the Ericsson Defendants in Paragraph 32 and therefore deny them.

## COUNT I

### No Infringement of the '357 Patent

33.    The T-Mobile Defendants incorporate by reference their responses to Paragraphs 1-32 of the Complaint.

34.     The T-Mobile Defendants admit that they provide wireless network services for LTE-compatible end-user devices.  The T-Mobile Defendants admit that the Ericsson Defendants provide certain eNodeBs in T-Mobile's network that comply with certain LTE standards and that Ericsson performs certain services with respect to some LTE eNodeBs in T-Mobile's network. The T-Mobile Defendants admit that they sell devices to certain subscribers and certain of those devices are compatible with LTE standards.  The T-Mobile Defendants deny the remaining allegations of Paragraph 34 of the Complaint.

35.     The T-Mobile Defendants admit that the 3GPP specifications cited in Paragraph 35 relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.  The T-Mobile Defendants deny IV's characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '357 Patent.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 35 and therefore deny them.

36.     The T-Mobile Defendants admit that the 3GPP specifications cited in Paragraph 35 relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.  The T-Mobile Defendants deny IV's characterizations of the cited specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '357 Patent.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 36 and therefore deny them.

37.     The T-Mobile Defendants deny the allegations of Paragraph 37 of the Complaint.

38.    The T-Mobile Defendants admit that they sell certain UEs and that they also sell wireless network services to subscribers.  The T-Mobile Defendants also admit that UEs cannot communicate with the network unless they are compatible with the network. The T-Mobile Defendants deny the remaining allegations of Paragraph 38 of the Complaint.

39.    The T-Mobile Defendants deny the allegations of Paragraph 39 of the Complaint.

40.    The T-Mobile Defendants deny the allegations of Paragraph 40 of the Complaint.

41.    The T-Mobile Defendants deny the allegations of Paragraph 41 of the Complaint.

42.    The T-Mobile Defendants deny the allegations of Paragraph 42 of the Complaint.

43.    To the extent any answer is required, the T-Mobile Defendants deny the allegations of Paragraph 43 of the Complaint.

44.    To the extent any answer is required, the T-Mobile Defendants deny the allegations of Paragraph 44 of the Complaint.

45.    To the extent any answer is required, the T-Mobile Defendants deny the allegations of Paragraph 45 of the Complaint.

46.    To the extent any answer is required, the T-Mobile Defendants deny the allegations of Paragraph 46 of the Complaint.

47.    To the extent any answer is required, the T-Mobile Defendants deny the allegations of Paragraph 47 of the Complaint.

48.    The T-Mobile Defendants admit that, on its face, the '357 Patent states that it was issued by the United States Patent and Trademark Office, but the T-Mobile Defendants deny that the '357 Patent claims are valid. The T-Mobile Defendants lack sufficient information about allegations regarding Ericsson's knowledge, and on that basis, deny such allegations to the extent

any response is required. The T-Mobile Defendants deny the remaining allegations of Paragraph 48.

## COUNT II

### No Infringement of the `828 Patent

49.     The T-Mobile Defendants incorporate by reference their responses to Paragraphs 1-48 of the Complaint.

50.     The T-Mobile Defendants admit that they provide wireless network services for LTE-compatible end-user devices. The T-Mobile Defendants admit that the Ericsson Defendants provide certain eNodeBs in T-Mobile's network that comply with certain LTE standards and that Ericsson performs certain services with respect to some LTE eNodeBs in T-Mobile's network. The T-Mobile Defendants deny IV's characterizations of the cited specifications and further specifically deny that their eNodeBs comply with or otherwise support any power control mode described by 3GPP 36.213 §§ 5.1.1.1 in which accumulation is allegedly not enabled.  The T-Mobile Defendants deny the remaining allegations of Paragraph 50 of the Complaint.

51.     The T-Mobile Defendants deny the allegations of Paragraph 51 of the Complaint.

52.     The T-Mobile Defendants admit that they sell devices to certain subscribers and certain of those devices are compatible with LTE standards. The T-Mobile Defendants deny the remaining allegations of Paragraph 52 of the Complaint.

53.     The T-Mobile Defendants deny the allegations of Paragraph 53 of the Complaint.

54.     The T-Mobile Defendants deny the allegations of Paragraph 54 of the Complaint.

55.     The T-Mobile Defendants deny the allegations of Paragraph 55 of the Complaint.

56.     The T-Mobile Defendants deny the allegations of Paragraph 56 of the Complaint.

57.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 57 of the Complaint.

58.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 58 of the Complaint.

59.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 59 of the Complaint.

60.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 60 of the Complaint.

61.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 61 of the Complaint.

62.     The T-Mobile Defendants admit that, on its face, the '828 Patent states that it was issued by the United States Patent and Trademark Office, but the T-Mobile Defendants deny that the '828 Patent claims are valid. The T-Mobile Defendants lack sufficient information about allegations regarding Ericsson's knowledge, and on that basis, deny such allegations to the extent any response is required. The T-Mobile Defendants deny the remaining allegations of Paragraph 62.

## COUNT III

## No Infringement of the `641 Patent

63.     The T-Mobile Defendants incorporate by reference their responses to Paragraphs 1-62 of the Complaint.

64.     The T-Mobile Defendants deny the allegations of Paragraph 64 of the Complaint.

65.     The T-Mobile Defendants admit that the Ericsson Defendants provide certain eNodeBs that are compliant with at least certain aspects of the LTE standard. The T-Mobile

Defendants admit that they sell devices to certain subscribers and certain of those devices are compatible with LTE standards. The T-Mobile Defendants deny the remaining allegations of Paragraph 65 of the Complaint.

66.     The T-Mobile Defendants admit that the Ericsson Defendants perform certain services with respect to some eNodeBs in T-Mobile's network.

67.     The T-Mobile Defendants admit that the 3GPP specifications cited in Paragraph 67 relate to certain aspects of the LTE standard and that LTE-compliant downlink transmissions use OFDMA.  The T-Mobile Defendants deny IV's characterizations of the cited specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '641 Patent.  The T-Mobile Defendants deny the remainder of the allegations of Paragraph 67 of the Complaint.

68.     The T-Mobile Defendants deny the allegations of Paragraph 68 of the Complaint.

69.     The T-Mobile Defendants admit that the 3GPP specifications cited in Paragraph 69 relate to certain aspects of the LTE standard but deny IV's characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '641 Patent.  The T-Mobile Defendants deny the remainder of the allegations of Paragraph 69 of the Complaint.

70.     The T-Mobile Defendants deny the allegations of Paragraph 70 of the Complaint.

71.     The T-Mobile Defendants admit that certain of the eNodeBs in its LTE network may be configured to support one or more features related to "carrier aggregation," but deny IV's characterization of "carrier aggregation" as described in Paragraph 71 and further deny that any of the eNodeBs in the T-Mobile network infringe any claim of the '641 Patent.  The T-Mobile Defendants deny the remaining allegations of Paragraph 71 of the Complaint.

72.     The T-Mobile Defendants deny the allegations of Paragraph 72 of the Complaint.

73.     The T-Mobile Defendants deny the allegations of Paragraph 73 of the Complaint.

74.     The T-Mobile Defendants deny the allegations of Paragraph 74 of the Complaint.

75.     The T-Mobile Defendants deny the allegations of Paragraph 75 of the Complaint.

76.     The T-Mobile Defendants deny the allegations of Paragraph 76 of the Complaint.

77.     The T-Mobile Defendants deny the allegations of Paragraph 77 of the Complaint.

78.     The T-Mobile Defendants deny the allegations of Paragraph 78 of the Complaint.

79.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 79 of the Complaint

80.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 80 of the Complaint.

81.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 81 of the Complaint.

82.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 82 of the Complaint.

83.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 83 of the Complaint.

84.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 84 of the Complaint.

85.     The T-Mobile Defendants admit that they litigated the '431 Patent in District Court, but specifically deny the characterization of that litigation, which resulted in a finding of invalidity of all asserted claims, and specifically deny that such activities give rise to knowledge of the '641 Patent.  The T-Mobile Defendants admit that, on its face, the '641 Patent states that it was issued

by the United States Patent and Trademark Office, but the T-Mobile Defendants deny that the '641 Patent claims are valid.  The T-Mobile Defendants admit that IV sued T-Mobile for allegedly infringing the '431 Patent in the District of Delaware (1:14-cv-01232-LPS) and that the Ericsson Defendants participated in the litigation as intervenors. The T-Mobile Defendants aver that the pleadings in the IPR proceedings regarding the '431 Patent speak for themselves and that the T-Mobile Defendants did not participate in the IPR proceedings, to which they were not a party. Therefore, no response is required to the allegations regarding the IPR proceedings in Paragraph 85 of the Complaint, but to the extent any response is required, the T-Mobile Defendants refer to the answer of the Ericsson Defendants regarding the IPR proceedings. The T-Mobile Defendants lack sufficient information about allegations regarding Ericsson's knowledge, and on that basis, deny such allegations to the extent any response is required. The T-Mobile Defendants deny the remaining allegations of Paragraph 85.

## COUNT IV

## No Infringement of the `018 Patent

86.     The T-Mobile Defendants incorporate by reference their responses to Paragraphs 1-85 of the Complaint.

87.     The T-Mobile Defendants admit that the cited 3GPP specifications relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.  The T-Mobile Defendants deny IV's characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '018 Patent.  The T-Mobile Defendants deny the remaining allegations of Paragraph 87 of the Complaint.

88.     The T-Mobile Defendants admit that the 3GPP specifications cited in Paragraph 88 relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.   The T-Mobile Defendants deny IV's characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '018 Patent.   The T-Mobile Defendants deny IV's characterizations of the cited specifications and further deny that any alleged compliance with the LTE standard infringes the '018 Patent. The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 88 and therefore deny them.

89.     The T-Mobile Defendants deny the allegations of Paragraph 89 of the Complaint.

90.     The T-Mobile Defendants admit that they sell devices to certain subscribers and certain of those devices are compatible with LTE standards. The T-Mobile Defendants deny the remaining allegations of Paragraph 90 of the Complaint.

91.     The T-Mobile Defendants deny the allegations of Paragraph 91 of the Complaint.

92.     The T-Mobile Defendants deny the allegations of Paragraph 92 of the Complaint.

93.     The T-Mobile Defendants deny the allegations of Paragraph 93 of the Complaint.

94.     The T-Mobile Defendants deny the allegations of Paragraph 94 of the Complaint.

95.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 95 of the Complaint.

96.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 96 of the Complaint.

97.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 97 of the Complaint.

98.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 98 of the Complaint.

99.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 99 of the Complaint.

100.    The T-Mobile Defendants admit that, on its face, the '018 Patent states that it was issued by the United States Patent and Trademark Office, but the T-Mobile Defendants deny that the '018 Patent claims are valid. The T-Mobile Defendants lack sufficient information about allegations regarding Ericsson's knowledge, and on that basis, deny such allegations to the extent any response is required. The T-Mobile Defendants deny the remaining allegations of Paragraph 100.

## COUNT V

## No Infringement of the `330 Patent

101.    The T-Mobile Defendants incorporate by reference their responses to Paragraphs 1-100 of the Complaint.

102.    The T-Mobile Defendants admit that the cited 3GPP specifications relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.  The T-Mobile Defendants deny IV's characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '330 Patent.  The T-Mobile Defendants deny the remaining allegations of Paragraph 102 of the Complaint.

103.    The T-Mobile Defendants admit that the 3GPP specifications cited in Paragraph 35 relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.   The T-Mobile Defendants deny IV's

characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '330 Patent.  The T-Mobile Defendants are without knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 103 and therefore deny them.

104.    The T-Mobile Defendants deny the allegations of Paragraph 104 of the Complaint.

105.    The T-Mobile Defendants admit that they sell devices to certain subscribers and certain of those devices are compatible with LTE standards.  The T-Mobile Defendants deny the remaining allegations of Paragraph 105 of the Complaint.

106.    The T-Mobile Defendants deny the allegations of Paragraph 106 of the Complaint.

107.    The T-Mobile Defendants deny the allegations of Paragraph 107 of the Complaint.

108.    The T-Mobile Defendants deny the allegations of Paragraph 108 of the Complaint.

109.    The T-Mobile Defendants deny the allegations of Paragraph 109 of the Complaint.

110.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 110 of the Complaint.

111.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 111 of the Complaint.

112.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 112 of the Complaint.

113.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 113 of the Complaint.

114.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 114 of the Complaint.

115.    To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 115 of the Complaint.

116.    The T-Mobile Defendants admit that, on its face, the '330 Patent states that it was issued by the United States Patent and Trademark Office, but the T-Mobile Defendants deny that the '330 Patent claims are valid. The T-Mobile Defendants lack sufficient information about allegations regarding Ericsson's knowledge, and on that basis, deny such allegations to the extent any response is required. The T-Mobile Defendants deny the remaining allegations of Paragraph 116.

## COUNT VI

## No Infringement of the `466 Patent

117.    The T-Mobile Defendants incorporate by reference their responses to Paragraphs 1-116 of the Complaint.

118.    The T-Mobile Defendants admit that the cited 3GPP specifications relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.  The T-Mobile Defendants deny IV's characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '466 Patent.  The T-Mobile Defendants deny the remaining allegations of Paragraph 118 of the Complaint.

119.    The T-Mobile Defendants admit that the 3GPP specifications cited in Paragraph 119 relate to certain aspects of the LTE standard and that the LTE standard describes mechanisms for wireless transmissions between the eNodeB and UE.  The T-Mobile Defendants deny IV's characterizations of those specifications and further deny that any alleged compliance with the LTE standard infringes any claim of the '466 Patent.  The T-Mobile Defendants are without

knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 119 and therefore deny them.

120.     The T-Mobile Defendants deny the allegations of Paragraph 120 of the Complaint.

121.     The T-Mobile Defendants admit that they sell devices to certain subscribers and certain of those devices are compatible with LTE standards.  The T-Mobile Defendants deny the remaining allegations of Paragraph 121 of the Complaint.

122.     The T-Mobile Defendants deny the allegations of Paragraph 122 of the Complaint.

123.     The T-Mobile Defendants deny the allegations of Paragraph 123 of the Complaint.

124.     The T-Mobile Defendants deny the allegations of Paragraph 124 of the Complaint.

125.     The T-Mobile Defendants deny the allegations of Paragraph 125 of the Complaint.

126.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 126 of the Complaint.

127.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 127 of the Complaint.

128.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 128 of the Complaint.

129.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 129 of the Complaint.

130.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 130 of the Complaint.

131.     To the extent any response is required, the T-Mobile Defendants deny the allegations of Paragraph 131 of the Complaint.

132.     The T-Mobile Defendants admit that, on its face, the '466 Patent states that it was issued by the United States Patent and Trademark Office, but the T-Mobile Defendants deny that the '466 Patent claims are valid. The T-Mobile Defendants lack sufficient information about allegations regarding Ericsson's knowledge, and on that basis, deny such allegations to the extent any response is required. The T-Mobile Defendants deny the remaining allegations of Paragraph 132.

## JURY DEMAND

133.     The T-Mobile Defendants admit that the Complaint sets forth a demand for a jury trial.

## PRAYER FOR RELIEF

134.     The T-Mobile Defendants deny the allegations contained in Plaintiff's Prayer for Relief, and the T-Mobile Defendants further deny that Plaintiff is entitled to any relief whatsoever, including any of the relief sought in Paragraphs a-f of its Prayer for Relief.  Plaintiff's Prayer for Relief should, therefore, be denied in its entirety and with prejudice, and Plaintiff should take nothing.

## DEFENSES

135.     The T-Mobile Defendants allege and assert the following defenses in response to the allegations contained in the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  The T-Mobile Defendants specifically reserve all rights to allege additional defenses and counterclaims that become known through their investigation into Plaintiff's allegations in the course of discovery.

The T-Mobile Defendants incorporate by reference the factual background recited *infra* in Paragraphs 1-132.

## FIRST DEFENSE: NON-INFRINGEMENT

136.     The T-Mobile Defendants do not infringe and have not infringed directly or indirectly, either literally or under the doctrine of equivalents, or in any other manner, and are not liable for infringement of any valid and enforceable claim of the '357, '828, '641, '018, '330, or '466 Patents.

## SECOND DEFENSE: INVALIDITY

137.     The claims of the '357, '828, '641, '018, '330, and '466 Patents are invalid for failure to comply with the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and 112.

## THIRD DEFENSE: ESTOPPEL/WAIVER

138.     Plaintiff's claims for relief are barred in whole or in part by estoppel and/or waiver.

139.     Plaintiff's claims for relief are barred in whole or in part by prosecution history estoppel and/or prosecution history disclaimer based on amendments, statements, admissions,

omissions, representations, disclaimers, and/or disavowals made by the applications for the '357, '828, '641, '018, '330, and '466 Patents.

140.   IV also has waived its rights to seek relief under the asserted patents because it could have asserted them, but chose not to, in previous cases, including District of Delaware C.A. Nos. 13-cv-1670, 13-cv-1671, 14-cv-1231, and 14-cv-1232 (the "Delaware Cases"), prior to final judgment being entered in Defendants' favor.  As a result of IV's waiver, IV is barred by the doctrine of claim preclusion and the *Kessler* doctrine from asserting any of the Asserted Patents against the Defendants.  The T-Mobile Defendants herein incorporate by reference their defense on claim preclusion and the *Kessler* doctrine as set forth below.

141.   By virtue of the FRAND obligations undertaken by IV's predecessor in interest, any claims for injunctive relief and/or a royalty in excess of a FRAND level have been waived, and IV is estopped from seeking any such injunctive relief of royalty in excess of a FRAND rate.

**FOURTH DEFENSE: LIMITATION ON DAMAGES**

142.   Plaintiff's claim for damages, if any, against the T-Mobile Defendants for alleged infringement of the '357, '828, '641, '018, '330, and '466 Patents, is limited by 35 U.S.C. §§ 286 and 287.  For example, under section 287, Plaintiff is prohibited from recovering damages for activities alleged to have occurred before Plaintiff provided actual notice of activities alleged to infringe with respect to T-Mobile products or services.  Plaintiff has not plead compliance with 35 U.S.C. § 287 and, therefore, is barred from recovery of past damages.

143.   Plaintiff is barred from recovering costs associated with this action under 35 U.S.C. § 288 and because the T-Mobile Defendants have not engaged in any conduct that entitles Plaintiff to attorneys' fees or costs.

## FIFTH DEFENSE: FAILURE TO STATE A CLAIM

144.    Plaintiff's Complaint fails to state a claim upon which relief may be granted.  For example, the T-Mobile Defendants incorporate by reference the T-Mobile Defendants' motion for invalidity based on issue preclusion.  Dkt. No. 28 (2:17-cv-0662-JRG).  As another example, Plaintiff's Complaint is barred by the doctrines of claim preclusion and the *Kessler* doctrine, as explained in detail below.

## SIXTH DEFENSE: PRECLUSION

145.    Plaintiff's claims for relief are barred by the doctrine of issue preclusion, claim preclusion, and the *Kessler* doctrine.  The T-Mobile Defendants incorporate by reference the Ericsson Defendants' motion for invalidity based on issue preclusion.  *See* Dkts. No. 28, 66.  For the reasons stated therein, issue preclusion bars Plaintiff from bringing the present suit against the T-Mobile Defendants.

146.    Plaintiff's claims also are barred by claim preclusion.  In the Delaware Cases, which arose from the same operative facts as the present action, Plaintiff accused the same products of infringing a related patent to the patents asserted in this case (U.S. Patent 7,787,431), and similar patents to patents asserted in this case (U.S. Patent Nos. 7,385,994 and 8,310,993).  Plaintiff could have asserted, but chose not to, some of the patents currently asserted in this case.  Instead, Plaintiff made the strategic decision to delay filing the instant suit until after the outcome of the prior litigation was determined in the Ericsson Defendants' and T-Mobile Defendants' favor.  Claim preclusion bars Plaintiff from bringing the present suit against the Ericsson Defendants and T-Mobile Defendants with respect to the same T-Mobile network, and specifically Ericsson LTE eNodeBs, found non-infringing in the Delaware Cases.

## SEVENTH DEFENSE: LICENSE/EXHAUSTION

147.     Plaintiff's Rule 3-1 Infringement Contentions identify various products, including but not limited to UE, MME, S-GW, P-GW, and PCRF, which may be licensed.  Accordingly, Plaintiff's claims may be barred by express license, implied license, or the doctrine of exhaustion.

148.     Plaintiff's Rule 3-1 Infringement Contentions, as drafted, do not clearly lay out the extent to which Plaintiff intends to rely on licensed products for purposes of carrying its burden of proving infringement.

### EIGHTH DEFENSE:  NO WILLFUL INFRINGEMENT

149.     Plaintiff cannot show that any willful infringement occurred. Plaintiff cannot show that an award of enhanced damages is appropriate because there has been no misconduct, let alone egregious misconduct, by the T-Mobile Defendants.  Plaintiff cannot show that the T-Mobile Defendants had knowledge of the Asserted Patents before the filing of the Complaint, and the T-Mobile Defendants have committed no wrongdoing.

### NINTH DEFENSE:  PATENT MISUSE

150.     Plaintiff's claims for relief against the T-Mobile Defendants are barred by the defense of patent misuse.  Among other things, Plaintiff has engaged and continues to engage in a scheme to impermissibly broaden the scope of the IPWireless Asserted Patents, including by impermissibly compelling and seeking to compel licensees and potential licensees to pay for non-essential patents as a condition for obtaining licenses to patents asserted to be LTE standards-essential, including the IPWireless Asserted Patents; impermissibly seeking to enforce and collect royalties for patents that are known to be and/or found to have been invalid, including one or more of the IPWireless Asserted Patents; and impermissibly asserting that patents, including the IPWireless Asserted Patents, are LTE standards-essential and entitled to claim priority to applications filed by its predecessors-in-interest prior to release of the LTE standard specifications,

while refusing to offer licenses to such patents under fair, reasonable and non-discriminatory

("FRAND") terms and claiming to be unbound by standards-development organization ("SDO")

commitments made by its predecessors-in-interest ███████████████████████████

████████████████████████████████████████████████.

## TENTH DEFENSE:  UNCLEAN HANDS

151.    The Asserted Patents are unenforceable due to IV's unclean hands in obtaining

them and in attempting to enforce them contrary to the FRAND obligations attendant to those

patents.

## COUNTERCLAIMS

152.   Pursuant to Rule 13 of the Federal Rules of Civil Procedure, the T-Mobile Defendants assert the following Counterclaims against Intellectual Ventures II LLC.

## BACKGROUND

### The Parties

153.   T-Mobile US, Inc. is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

154.   T-Mobile USA, Inc. is a Delaware corporation with its principal place of business at 12920 SE 38th Street, Bellevue, Washington 98006.

155.   Based on information and belief, Intellectual Ventures II LLC ("IV") is a Delaware limited liability company with its principal place of business located in Bellevue, Washington.

156.   IV (with its affiliates) claims to be the owner of over 70,000 patents, including U.S. Patent Nos. 8,682,357, 8,897,828, 8,953,641, 9,320,018, 9,532,330, and 9,681,466 (collectively, the "Asserted Patents").

157.   IV and its affiliates have sued T-Mobile Defendants more than four times, collectively, alleging infringement of more than twenty patents.

158.   IV and its affiliates never have succeeded in proving that T-Mobile infringes any valid claim of any IV patent.

159.   IV filed this lawsuit only after the District of Delaware entered judgment that the T-Mobile Defendants' use of Ericsson's LTE eNodeBs did not infringe other IV patents in an earlier case filed by IV and its affiliate.

### The Asserted IPWireless Patents

160.    IV acquired its purported interest in each of the '828, '357, '330, '018, and '466 Patents from IPWireless, Inc. ("IPWireless") (collectively the "IPWireless Asserted Patents"). More specifically, on or after April 27, 2012, IV acquired a purported interest in patent applications to which the IPWireless Asserted Patents claim priority (the "IPWireless Applications").

161.    IV claims that the T-Mobile Defendants infringe each of the IPWireless Asserted Patents because accused equipment in the T-Mobile Defendants' LTE network complies with the LTE standard.  IV purports to show infringement by virtue of the LTE specifications.  According to IV, one or more of the IPWireless Asserted Patents is a standards essential patent to the LTE standard.

162.    The European Telecommunications Standards Institute ("ETSI") developed standards associated with LTE technology.  IPWireless was a participant in the ETSI LTE standards development effort and made technical submissions to have its technology included in the LTE standard.

163.    As described in more detail below, on April 18, 2012, IPWireless made an irrevocable commitment (the "IPWireless ETSI Declaration") to ETSI that it would offer to license the Asserted IPWireless Patents on FRAND terms to the extent they became essential to implementation of the LTE standard.

164.    ████████████████████████████████████████████████████████████
████████████████████████████████████.

165.    At the time of IV's acquisition from IPWireless, none of the IPWireless Asserted Patents had issued, and none of the IPWireless Applications contained any of the patent claims that IV now asserts (the "IPWireless Asserted Claims").

166.   At the time IV acquired its purported interest in the IPWireless Patents on or about April 27, 2012, the portions of the LTE specifications upon which IV relies to show infringement (the "IV-cited LTE Materials") had been adopted as part of the LTE standard.

167.   IV first drafted the asserted claims of the IPWireless Asserted Patents only after the IV-cited LTE Materials had been adopted by ETSI.  On information and belief, IV drafted the asserted claims of the IPWireless Asserted Patents with knowledge of the IV-cited LTE Materials and with an intent to cover the IV-cited LTE Materials with those new claims.

168.   To overcome the otherwise prior-art status of certain LTE specifications to the IPWireless Asserted Claims, IV relies upon priority claims to the IPWireless Applications that IPWireless had irrevocably committed to offer to license on FRAND terms.

169.   Upon information and belief, IV did not disclose to the United States Patent Office that IPWireless' technical submissions to ETSI – which were the basis for its patent applications – had not been accepted by ETSI for the LTE standard.  IV did not make this disclosure even though IV was attempting to draft claims to read on the LTE standard based on those rejected IPWireless technical submissions.  Nor did IV disclose as prior art the technical submissions made by multiple other ETSI participants that had been incorporated into the LTE specifications at issue.

170.   IV also misrepresented to the United States Patent Office that the originally-filed IPWireless Applications, which pre-dated the publication of the LTE specification, supported the claims that IV had drafted with reference to the LTE specification, and that ultimately issued as the IPWireless Asserted Claims.

### Standards Essential Patents and ETSI's IPR Policy

171.   Standard development activities are recognized to create significant benefits for both manufacturers implementing the standard and for the consumers of those products.  Among

other things, standards allow manufacturers of many different devices to invest in the design and

marketing of their products knowing that those products will interoperate effectively with other

manufacturers' devices.

172.    ETSI maintains an Intellectual Property Rights Policy ("IPR Policy") binding on

its members.

173.    The ETSI IPR Policy states in relevant part:

> [E]ach MEMBER shall use its reasonable endeavours, in particular
> during the development of a STANDARD or TECHNICAL
> SPECIFICATION where it participates, to inform ETSI of
> ESSENTIAL IPRs in a timely fashion.  In particular, a MEMBER
> submitting a technical proposal for a STANDARD or
> TECHNICAL SPECIFICATION shall, on a bona fide basis, draw
> the attention of ETSI to any of that MEMBER's IPR which might
> be ESSENTIAL if that proposal is adopted.

174.    The ETSI IPR Policy also states:

> When an ESSENTIAL IPR relating to a particular STANDARD or
> TECHNICAL SPECIFICATION is brought to the attention of
> ETSI, the Director-General of ETSI shall immediately request the
> owner to give within three months an irrevocable undertaking in
> writing that it is prepared to grant irrevocable licenses on fair,
> reasonable and non-discriminatory ("FRAND") terms and
> conditions under such IPR to at least the following extent:
>
> - MANUFACTURE, including the right to make or have
>   made customized components and sub-systems to the
>   licensee's own design for use in MANUFACTURE;
>
> - sell, lease, or otherwise dispose of EQUIPMENT so
>   MANUFACTURED;
>
> - repair, use, or operate EQUIPMENT; and
>
> - use METHODS.

175.    The ETSI IPR Policy also makes clear that the undertaking to be prepared to grant

licenses on FRAND terms "with regard to a specified member of a PATENT FAMILY shall apply

to all existing and future ESSENTIAL IPRs of that PATENT FAMILY unless there is an explicit written exclusion of specified IPRs at the time the undertaking is made." Thus, an undertaking to ETSI regarding a parent patent or patent application attaches to all subsequently-issued patents in that family to the extent they claim subject matter essential to the standard.

176.    ETSI does not require participants to make a commitment to offer licenses on FRAND terms. Rather, ETSI requires that members that own intellectual property rights (IPRs) that are or may become essential to a standard make a clear and irrevocable declaration as to their future licensing intentions. For such ETSI participants who are unwilling to commit to licensing patents on FRAND terms and conditions, the ETSI IPR Policy provides that when "an IPR owner informs ETSI that it is not prepared to license an IPR in respect of a STANDARD or TECHNICAL SPECIFICATION" under FRAND terms, the standards development body shall seek to substitute "viable alternative technology." In those instances where no viable alternative technology is found to exist, the ETSI IPR Policy provides that work on the standard or technical specification at issue "shall cease."

**IPWireless' FRAND Commitments Are Binding on IV**

177.    On April 24, 2012, IPWireless submitted a declaration to ETSI bearing the reference number ISLD-201204-010 ("IPWireless ETSI Declaration"). In that declaration, IPWireless committed:

> In accordance with Clause 6.1 of the ETSI IPR Policy the Declarant and/or its AFFILIATES hereby irrevocably declares . . . : To the extent that the IPR(s) disclosed in the attached IPR Information Statement Annex are or become, and remain ESSENTIAL in respect of the ETSI Work Item, STANDARD and/or TECHNICAL SPECIFICATION identified in the attached IPR Information Statement Annex, the Declarant and/or its AFFILIATES are prepared to grant irrevocable licenses under this/these IPR(s) on terms and conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy.

178.    The IPWireless ETSI Declaration identified the IPWireless Applications as subject to its FRAND commitment.   In particular, it identified United States Patent Publication No. 2006035660, which issued as the '828 Patent, and United States Patent Publication No. 2007259675 A1, which issued as the '357 Patent and is the parent of the '330 Patent.   The IPWireless ETSI Declaration also identified United States Patent No. 8,005,041 ("the '041 Patent"), which is the parent of the '466 and '018 Patents.

179.    IPWireless did not exclude from the scope of its ETSI Declaration any future essential patents that may arise from the identified patent families. Under Clause 6.1 of the ETSI IPR Policy, IPWireless' undertaking applies to each of the IPWireless Patents (including specifically the '828, '357, '330, '018, and '466 Patents).

180.    Through its submission of the Declaration to ETSI, and by operation of the ETSI IPR Policy, IPWireless irrevocably committed that, to the extent that any patents arising out of the IPWireless Applications, including each of the IPWireless Asserted Patents, were to become essential to the LTE standard, they would be offered and available for license on FRAND terms and conditions.

181.    ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████.

182.    ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████.

183.    IV is bound by the FRAND commitments made by IPWireless to ETSI with regard

to the IPWireless Asserted Patents.  Clause 4.2 of the ETSI Guide on IPRs specifically provides

that:

> those implementing ETSI standards should be able to rely on licensing
> undertakings provided in accordance with Clause 6.1 of the ETSI IPR Policy,
> regardless of any change in the ownership of the relevant IPRs.  To that end, it is
> desirable that, to the maximum extent possible in each legal jurisdiction, when
> ownership of an ESSENTIAL IPR is transferred, any applicable licensing
> undertaking should automatically transfer to the new owner.

Nov. 30, 2011, ETSI Guide on IPRs.  Accordingly, the ETSI IPR Policy provides that "FRAND

licensing undertakings made pursuant to Clause 6 shall be interpreted as encumbrances that bind

all successors-in-interest."  March 20, 2013 ETSI IPR Policy, Clause 6.1bis; *see also* September

19, 2013 ETSI Guide on IPRs, Clause 4.2 (explaining that third parties including Courts should

"interpret any FRAND licensing undertaking made pursuant to the ETSI IPR Policy as an

encumbrance that binds all successors-in-interest").

184.    The IPWireless ETSI Declaration itself indicates that IPWireless "***irrevocably***

***declares***" that it is "prepared to grant irrevocable licenses under this/these IPR(s) on terms and

conditions which are in accordance with Clause 6.1 of the ETSI IPR Policy."  This language further

indicates that ETSI expected the FRAND commitment to remain for the life of those IPRs,

regardless of any transfer of ownership.

185.    T-Mobile's suppliers Ericsson and Nokia are members of ETSI and manufacturers

of LTE-compliant end-device "Equipment" within the meaning of ETSI's IPR policy clause 6.1.

T-Mobile itself is also a participant in 3GPP standard setting activity through another

organizational member of 3GPP, ATIS.  Deutsche Telekom AG is a controlling shareholder of T-

Mobile, and thus T-Mobile is a member of ETSI, according to the terms of the IPR Policy.

Through all three of these routes, T-Mobile is an intended third-party beneficiary of IPWireless' FRAND commitment.

## IV's Attempt to Avoid its FRAND Commitments

186.   ETSI FRAND commitments run with the patents and bind all successors-in-interest.  In addition, as an extra assurance, the ETSI IPR Policy provides that a Declarant who has committed to license on FRAND terms and seeks to transfer ownership of those standard essential patents or patent applications, "shall include appropriate provisions in the relevant transfer documents to ensure that the undertaking is binding on the transferee and that the transferee will similarly include appropriate provisions in the event of future transfers with the goal of binding all successors-in-interest."   The ETSI IPR policy provides further that the "[FRAND] undertaking shall be interpreted as binding on successors-in-interest regardless of whether such provisions are included in the relevant transfer documents."

187.   At least the '828, '357, '330, '018, and '466 Patents are covered by IPWireless' undertaking to ETSI, and IV is bound by the obligations imposed by that undertaking, including its obligation to be prepared to grant a license to these patents claimed to be essential to the LTE standard on FRAND terms.

188.   Upon information and belief, █████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████.

189.   IV contends that it is not obligated to license or offer to license any of the IPWireless Patents on FRAND terms. Indeed, IV has asserted in a sworn court pleading that it is not obligated to license patents it acquired from IPWireless on FRAND terms.

190.    IV has acted in a manner inconsistent with its FRAND obligations.  Before filing this lawsuit, IV did not offer the T-Mobile Defendants a license to any of the IPWireless Asserted Patents on FRAND terms and conditions.

191.    IV has disavowed that it has any obligation to offer licenses to the IPWireless Asserted Patents on FRAND terms and conditions.

**JURISDICTION AND VENUE**

192.    The T-Mobile Defendants seek a declaration that each and every claim of the Asserted Patents is invalid, unenforceable, and not infringed pursuant to the Patent Laws of the United States, 35 U.S.C. § 101, et seq.  Accordingly, this Court has subject matter jurisdiction under the Federal Declaratory Judgment Act, Title 28, United States Code §§ 2201 and 2202, and under Title 28, United States Code §§ 1331 and 1338(a).

193.    This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1337(a).  This Court has subject matter jurisdiction over the breach of contract claim, consumer protection claim, and unfair competition claim arising under state law pursuant to 28 U.S.C. § 1367(a).

194.    An actual, substantial, and continuing justiciable controversy exists between the T-Mobile Defendants and IV with respect to which the T-Mobile Defendants require a declaration of their rights by this Court.

195.    Under 28 U.S.C. §§ 1391 and 1400(b), venue is proper for the T-Mobile Defendants' counter-claims against IV.

196.    The T-Mobile Defendants bring the following counterclaims against IV:

**COUNT I**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '357 PATENT**

197.     The T-Mobile Defendants reallege and incorporate by reference the allegations in Paragraphs 152-196 as though fully set forth here.

198.     This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '357 Patent.

199.     The T-Mobile Defendants have not infringed and do not infringe any valid and enforceable claim of the '357 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

200.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether the T-Mobile Defendants have infringed or infringe any valid and enforceable claim of the '357 Patent.

201.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 197-200 above. Such a determination and declaration are necessary and appropriate at this time, so that the parties may ascertain their respective rights and duties in this regard.

## COUNT II

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '357 PATENT

202.     The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

203.     This is an action for declaratory judgment of invalidity of any and all claims of the '357 Patent.

204.     The '357 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

205.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether there exists any valid claim of the '357 Patent.

206.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 202-205 above. Such a determination and declaration are necessary and appropriate at this time, so the parties may ascertain their respective rights and duties in this regard.

**COUNT III**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '828 PATENT**

207.     The T-Mobile Defendants reallege and incorporate by reference the allegations in Paragraphs 152-196 as though fully set forth here.

208.     This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '828 Patent.

209.     The T-Mobile Defendants have not infringed and do not infringe any valid and enforceable claim of the '828 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

210.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether the T-Mobile Defendants have infringed or infringe any valid and enforceable claim of the '828 Patent.

211.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 207-210 above. Such a determination and declaration are necessary and appropriate at this time, so that the parties may ascertain their respective rights and duties in this regard.

## COUNT IV

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '828 PATENT

212.     The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

213.     This is an action for declaratory judgment of invalidity of any and all claims of the '828 Patent.

214.     The '828 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

215.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether there exists any valid claim of the '828 Patent.

216.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 212-215 above. Such a determination and declaration are necessary and appropriate at this time, so the parties may ascertain their respective rights and duties in this regard.

## COUNT V

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '641 PATENT

217.     The T-Mobile Defendants reallege and incorporate by reference the allegations in Paragraphs 152-196 as though fully set forth here.

218.     This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '641 Patent.

219. The T-Mobile Defendants have not infringed and do not infringe any valid and enforceable claim of the '641 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

220. There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between T-Mobile Defendants and IV as to whether the T-Mobile Defendants have infringed or infringe any valid and enforceable claim of the '641 Patent.

221. The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 217-220 above. Such a determination and declaration are necessary and appropriate at this time, so that the parties may ascertain their respective rights and duties in this regard.

**COUNT VI**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '641 PATENT**

222. The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

223. This is an action for declaratory judgment of invalidity of any and all claims of the '641 Patent.

224. The '641 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

225. There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether there exists any valid claim of the '641 Patent.

226.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 222-225 above. Such a determination and declaration are necessary and appropriate at this time, so the parties may ascertain their respective rights and duties in this regard.

## COUNT VII

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '018 PATENT

227.     The T-Mobile Defendants reallege and incorporate by reference the allegations in Paragraphs 152-196 as though fully set forth here.

228.     This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '018 Patent.

229.     The T-Mobile Defendants have not infringed and do not infringe any valid and enforceable claim of the '018 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

230.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether the T-Mobile Defendants have infringed or infringe any valid and enforceable claim of the '018 Patent.

231.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 227-230 above. Such a determination and declaration are necessary and appropriate at this time, so that the parties may ascertain their respective rights and duties in this regard.

## COUNT VIII

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '018 PATENT

232.     The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

233.     This is an action for declaratory judgment of invalidity of any and all claims of the '018 Patent.

234.     The '018 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

235.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether there exists any valid claim of the '018 Patent.

236.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 232-235 above. Such a determination and declaration are necessary and appropriate at this time, so the parties may ascertain their respective rights and duties in this regard.

## COUNT IX

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '330 PATENT

237.     The T-Mobile Defendants reallege and incorporate by reference the allegations in Paragraphs 152-196 as though fully set forth here.

238.     This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '330 Patent.

239.     The T-Mobile Defendants have not infringed and do not infringe any valid and enforceable claim of the '330 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

240.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether T-Mobile Defendants have infringed or infringe any valid and enforceable claim of the '330 Patent.

241.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 237-240 above. Such a determination and declaration are necessary and appropriate at this time, so the parties may ascertain their respective rights and duties in this regard.

## COUNT X

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '330 PATENT

242.     The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

243.     This is an action for declaratory judgment of invalidity of any and all claims of the '330 Patent.

244.     The '330 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

245.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether there exists any valid claim of the '330 Patent.

246.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 242-245 above. Such a determination and declaration are necessary and appropriate at this time, so the parties may ascertain their respective rights and duties in this regard.

## COUNT XI

### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '466 PATENT

247.     The T-Mobile Defendants reallege and incorporate by reference the allegations in Paragraphs 152-196 as though fully set forth here.

248.     This is an action for declaratory judgment of non-infringement of any and all valid and enforceable claims of the '466 Patent.

249.     The T-Mobile Defendants have not infringed and do not infringe any valid and enforceable claim of the '466 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

250.     There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether the T-Mobile Defendants have infringed or infringe any valid and enforceable claim of the '466 Patent.

251.     The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 247-250 above. Such a determination and declaration are necessary and appropriate at this time, so that the parties may ascertain their respective rights and duties in this regard.

### COUNT XII
### DECLARATORY JUDGMENT OF INVALIDITY OF THE '466 PATENT

252.     The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

253.     This is an action for declaratory judgment of invalidity of any and all claims of the '466 Patent.

254.   The '466 Patent, and each claim thereof, is invalid for failure to comply with one or more of the conditions and requirements of patentability set forth in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

255.   There is an actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, between the T-Mobile Defendants and IV as to whether there exists any valid claim of the '466 Patent.

256.   The T-Mobile Defendants request a judicial determination and declaration of the respective rights and duties of the parties on the disputes recited in Paragraphs 252-255 above. Such a determination and declaration are necessary and appropriate at this time, so the parties may ascertain their respective rights and duties in this regard.

## COUNT XIII
## BREACH OF CONTRACT

257.   The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

258.   As part of its activities participating in ETSI, IPWireless contractually committed to be prepared to grant licenses to its declared, standards essential patents on FRAND terms and conditions.   As a result, the IPWireless Asserted Patents must be made available to license on FRAND terms by end-device equipment manufacturers that practice the LTE standard.

259.   ETSI FRAND commitments are binding on all subsequent patent owners, including IV.  In this case, █████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████ relied upon the priority dates of those encumbered patent applications before the PTO to obtain the IPWireless Asserted Patents.  By its actions in relying upon the priority of the

IPWireless Applications, IV evidenced its understanding that the IPWireless Asserted Patents were part of the same patent family as the FRAND-encumbered IPWireless Applications.

260.     T-Mobile's suppliers Ericsson and Nokia are members of ETSI and manufacturers of LTE-compliant end-device "Equipment" within the meaning of ETSI's IPR policy clause 6.1. T-Mobile itself is also a participant in 3GPP standard setting activity through another organizational member of 3GPP, ATIS.  Deutsche Telekom AG, which is a controlling shareholder of T-Mobile and thus of which T-Mobile is an "affiliate" within the terms of the IPR policy, is a member of ETSI.  Through all three of these routes, T-Mobile is an intended third-party beneficiary of IPWireless' FRAND commitment.

261.     IV has asserted that the T-Mobile Defendants infringe the IPWireless Asserted Patents by virtue of their use of equipment that complies with aspects of the LTE standard, and IV has asserted that one or more LTE specifications cannot be practiced without infringing one or more of the IPWireless Asserted Patents.

262.     Before bringing this lawsuit against the T-Mobile Defendants, IV did not notify the T-Mobile Defendants of any alleged infringement of the IPWireless Asserted Patents.

263.     IV has never offered the T-Mobile Defendants a license to any of the IPWireless Asserted Patents on FRAND terms and conditions.

264.     IV has disavowed that it has any obligation to offer licenses to the IPWireless Asserted Patents to manufacturers of standard-compliant equipment on FRAND terms and conditions.

265.     ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████    Significantly,

IV's predecessor-in-interest would in fact have been obligated to declare those patents (and/or their predecessors or parent applications) as essential (if IV's predecessor actually believed they were essential) during the standard-setting process for the LTE standards, rather than after the LTE standards had been adopted in reliance on the declarations that had been made. IV relied on the priority dates of those IPWireless applications to obtain issuance of patent claims that IV drafted with an intent of aligning them to the LTE standards that already had issued. ████████████

███████████████████████████████████████████████████

██████████████ IV has asserted that those resulting patents are infringed by virtue of compliance with one or more LTE standards while at the same time refusing to offer licenses to such patents under the promised FRAND terms. IV has gone so far as to affirmatively claim that it is not bound by SDO commitments made by its predecessors-in-interest to ETSI at the time the LTE standard was being developed.

266.   By contending that the IPWireless Asserted Patents are essential to implementation of the LTE standard (or, to the extent any such patent may be found to be essential to the LTE standard) without having first offered a license on FRAND terms, IV has breached its FRAND commitments, including by initiating and pursuing this lawsuit without offering a license to the IPWireless Asserted Patents on FRAND terms and conditions, and without offering a license to the IPWireless Asserted Patents as a separate portfolio apart from its broader portfolio of non-essential patents.

267.   As a direct result of IV's contractual breach, the T-Mobile Defendants have suffered and are suffering harm to their business and property. The T-Mobile Defendants' past and continuing harm includes at least litigation costs, attorneys' fees, business uncertainty, and business resources lost in dealing with the consequences of IV's contractual breach.

268.    IV's failure to be prepared to grant the T-Mobile Defendants a license to any of the IPWireless Asserted Patents on FRAND terms and conditions renders the asserted claims of the Asserted Patents unenforceable.

269.    In addition to their actual damages, the T-Mobile Defendants request an award of attorneys' fees and costs to defend against this action, due to IV's breach of its obligations under the ETSI IPR Policy.

## COUNT XIV
## VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

270.    The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

271.    IV is liable to the T-Mobile Defendants for violations of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86 *et seq.*, including but not limited to unlawful acts that violate unfair competition laws of Washington, Wash. Rev. Code § 19.86.20, *et seq.*  Among other things, IV has engaged in unlawful and unfair acts or practices and unfair methods of competition affecting commerce related to certain patented technologies claimed to be essential to implementation of the LTE standard.

272.    IV's unlawful and unfair conduct includes ███████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████s, drafting patent claims in those applications with an intent to align those claims to the LTE standard without disclosing to the Patent Office that its patent applications related to IPWireless technical submissions that were not accepted for inclusion into the LTE standard and without disclosing that it was attempting to draft claims to align with the LTE standard that did not adopt IPWireless' technical submissions, and, after relying on the priority dates of those applications to obtain

issuance of patent claims that IV drafted with an intent of aligning them to LTE standards, impermissibly asserting those patents to be infringed by virtue of compliance with one or more LTE standards while at the same time refusing to license such patents under FRAND terms and claiming to be unbound by SDO commitments made by its predecessors-in-interest.

273.    IV's unlawful acts impact the public interest.  Voluntary standards development activities, particularly in the wireless and communications fields, are widely recognized to be procompetitive activities that enhance interoperability, lower barriers to entry, and reduce costs to consumers.  IV's conduct injures or threatens to injure the public interest by reducing incentives for companies to participate in standards organizations, to contribute their ideas to standards development organizations, or to invest in implementation of standards-compliant devices.

274.    T-Mobile's suppliers Ericsson and Nokia are members of ETSI and manufacturers of LTE-compliant end-device "Equipment" within the meaning of ETSI's IPR policy clause 6.1. T-Mobile itself is also a participant in 3GPP standard setting activity through another organizational member of 3GPP, ATIS.  Deutsche Telekom AG, which is a controlling shareholder of T-Mobile and thus of which T-Mobile is an "affiliate" within the terms of the IPR policy, is a member of ETSI.  Through all three of these routes, T-Mobile is an intended third-party beneficiary of IPWireless' FRAND commitment.

275.    Before bringing this lawsuit against the T-Mobile Defendants, IV did not notify the T-Mobile Defendants of any alleged infringement of the IPWireless Asserted Patents.  IV has never offered the T-Mobile Defendants a license to any of the IPWireless Asserted Patents on FRAND terms and conditions.

276.    IV has disavowed that it has any obligation to offer licenses to the IPWireless Asserted Patents to manufacturers of standard-compliant equipment on FRAND terms and conditions.

277.    IV's unlawful acts further include filing serial infringement suits against the T-Mobile Defendants, without regard to the merits of those lawsuits and for the purpose of harassing the T-Mobile Defendants.

278.    IV's unlawful acts have interfered with the T-Mobile Defendants' ability to conduct its business, and as a direct result of IV's conduct, T-Mobile Defendants have suffered and are suffering harm to their business.

## COUNT XV
## VIOLATION OF TEXAS UNFAIR COMPETITION

279.    The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

280.    IV is liable to the T-Mobile Defendants for violations of Texas unfair competition law, including but not limited to the commission of unlawful acts that violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

281.    Among other things, IV has engaged in unlawful and unfair acts or practices and unfair methods of competition affecting commerce related to certain patented technologies claimed to be essential to implementation of the LTE standard.  IV's unlawful and unfair conduct █████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████, drafting patent claims in those applications with an intent to align those claims to the LTE standard without disclosing to the Patent Office that its patent applications related to IPWireless technical submissions that were not accepted for inclusion into

the LTE standard and without disclosing that it was attempting to draft claims to align with the LTE standard that did not adopt IPWireless' technical submissions, and, after relying on the priority dates of those applications to obtain issuance of patent claims that IV drafted with an intent of aligning them to LTE standards, impermissibly asserting those patents to be infringed by virtue of compliance with one or more LTE standards while at the same time refusing to offer to license such patents under FRAND terms and claiming to be unbound by SDO commitments made by its predecessors-in-interest.

282.    T-Mobile's suppliers Ericsson and Nokia are members of ETSI and manufacturers of LTE-compliant end-device "Equipment" within the meaning of ETSI's IPR policy clause 6.1. T-Mobile itself is also a participant in 3GPP standard setting activity through another organizational member of 3GPP, ATIS. Deutsche Telekom AG, which is a controlling shareholder of T-Mobile and thus of which T-Mobile is an "affiliate" within the terms of the IPR policy, is a member of ETSI.  Through all three of these routes, T-Mobile is an intended third-party beneficiary of IPWireless' FRAND commitment.

283.    Before bringing this lawsuit against the T-Mobile Defendants, IV did not notify the T-Mobile Defendants of any alleged infringement of the IPWireless Asserted Patents. IV has never offered the T-Mobile Defendants a license to any of the IPWireless Asserted Patents on FRAND terms and conditions.

284.    IV has disavowed that it has any obligation to offer licenses to the IPWireless Asserted Patents to manufacturers of standard-compliant equipment on FRAND terms and conditions.

285.     IV's unlawful acts further include filing serial infringement suits against the T-Mobile Defendants, without regard to the merits of those lawsuits and for the purpose of harassing the T-Mobile Defendants.

286.     IV's unlawful acts have interfered with T-Mobile Defendants' ability to conduct their business, and as a direct result of IV's conduct, the T-Mobile Defendants have suffered and are suffering harm to their business.

## COUNT XVI
## UNCLEAN HANDS

287.     The T-Mobile Defendants reallege and incorporate by reference the foregoing allegations in Paragraphs 152-196 as though fully set forth here.

288.     IV's claims for relief against the T-Mobile Defendants are barred, in whole or in part, by the defense of unclean hands.



291.     At the time IV acquired its purported interest in the IPWireless Patents on or about April 27, 2012, the IV-cited LTE Materials had been adopted as part of the LTE standard.

292.    IV first drafted the asserted claims of the IPWireless Asserted Patents only after the IV-cited LTE Materials had been adopted by ETSI.  On information and belief, IV drafted the asserted claims of the IPWireless Asserted Patents with knowledge of the IV-cited LTE Materials and with an intent to cover the IV-cited LTE Materials with those new claims.

293.    To overcome the otherwise prior-art status of certain LTE specifications to the IPWireless Asserted Claims, IV relies upon priority claims to the IPWireless Applications that IPWireless had irrevocably committed to offer to license on FRAND terms.

294.    Upon information and belief, IV did not disclose to the United States Patent Office that IPWireless' technical submissions to ETSI that relate to the Asserted IPWireless Patents were not adopted in the LTE Standard; nor did IV disclose as prior art the technical submissions made by multiple other ETSI participants that had been incorporated into the LTE specifications at issue; nor did IV disclose to the Patent Office that it intended to draft claims to more closely align with the LTE standards that had not adopted IPWireless' technical submissions relevant to the Asserted IPWireless Patents.

295.    IV also misrepresented to the United States Patent Office that the originally-filed IPWireless Applications, which pre-dated the publication of the LTE specification, supported the claims that IV had drafted with reference to the LTE specification, and that ultimately issued as the IPWireless Asserted Claims.

296.    IV now attempts to enforce the Patents-in-Suit against the T-Mobile Defendants without regard to the FRAND commitment associated with the Patents-in-Suit due to IPWireless' undertaking to ETSI.

297.     Before filing this lawsuit, IV did not offer the T-Mobile Defendants a license to any of the IPWireless Asserted Patents, and to this date, IV has never offered the T-Mobile Defendants a license to any of the IPWireless Asserted Patents on FRAND terms and conditions.

298.     IV attempts to leverage the alleged strength of the IPWireless Asserted Patents regarding purported standards essential patents to extract a license on unrelated patents from the T-Mobile Defendants.  One of the Asserted Patents, the '641 Patent, was not a part of the group of patents that IPWireless previously owned and that IPWireless included in its declaration to ETSI. Yet, on information and belief, IV asserts these patents in the same lawsuit in an attempt to group the '641 Patent with the IPWireless Asserted Patents, and to extract an additional license.

299.     IV is barred by the doctrine of unclean hands from enforcing the Patents-in-Suit against Ericsson.

## ATTORNEYS' FEES

300.     This action qualifies as an exceptional case, supporting an award of reasonable attorneys' fees, costs, and expenses for the T-Mobile Defendants against IV pursuant to 35 U.S.C. § 285.

301.     The T-Mobile Defendants request an award of attorneys' fees and costs to defend against this action, due to IV's breach of its obligations under the ETSI IPR Policy and breach of contract.

## DEMAND FOR JURY TRIAL

302.     The T-Mobile Defendants request a trial by jury of all issues in this action triable by a jury.

## PRAYER FOR RELIEF

The T-Mobile Defendants pray for judgment as follows:

A.       That this Court fully and finally dismiss IV's claims against T-Mobile Defendants and order that IV take nothing from the T-Mobile Defendants;

B.       That this Court find that the T-Mobile Defendants do not infringe any valid and enforceable claim of the '357, '828, '641, '018, '330, and '466 Patents;

C.       That this Court find that the '357, '828, '641, '018, '330, and '466 Patents are invalid pursuant to Title 35 of the United States Code;

D.       That this Court find IV liable for breach of contract;

E.       That this Court find IV liable for violation of the Washington Consumer Protection Act;

F.       That this Court find IV liable for violation of the Texas unfair competition law;

G.       That this Court find that the '357, '828, '641, '018, '330, and '466 Patents are unenforceable due to IV's breach of its obligations under the ETSI IPR Policy and breach of contract;

H.       That this Court find that the '357, '828, '641, '018, '330, and '466 Patents are unenforceable due to IV's unclean hands and patent misuse;

I.       That this Court find that this is an exceptional case and award the T-Mobile Defendants their attorneys' fees pursuant to 35 U.S.C. § 285 or otherwise; and

J.       That this Court grant the T-Mobile Defendants such other and further relief as the Court may deem just and proper.

Dated:  October 15, 2018

Respectfully submitted,

By: */s/ Douglas M. Kubehl*

Asim M. Bhansali
  State Bar No. 90001290
  E-mail:  abhansali@kblfirm.com
Kate E. Lazarus
  *Admitted Pro Hac Vice*
  E-mail:  klazarus@kblfirm.com
**KWUN BHANSALI LAZARUS LLP**
555 Montgomery Street, Suite 750
San Francisco, California, 94111
Telephone: (415) 630-2350

R. Adam Lauridsen
  *Admitted Pro Hac Vice*
  E-mail:  alauridsen@keker.com
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, CA 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

**ATTORNEYS FOR T-MOBILE USA,
INC. and T-MOBILE US, INC.**

Douglas M. Kubehl
  Texas State Bar No. 00796909
  E-mail: doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
  E-mail: jeff.becker@bakerbotts.com
Johnson K. Kuncheria
  Texas State Bar No. 24070092
  Email: johnson.kuncheria@bakerbotts.com
Harrison G. Rich
  Texas State Bar No. 24083730
  E-mail: harrison.rich@bakerbotts.com
Steven T. Jugle
  Texas State Bar No. 24083280
  E-mail: steven.jugle@bakerbotts.com
Megan V. LaDriere
  Texas State Bar No. 24083348
  E-mail: megan.ladriere@bakerbotts.com
Melissa L. Butler
  Texas State Bar No. 24097442
  E-mail:  melissa.butler@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Melissa R. Smith
  Texas State Bar No. 24001351
  E-mail:  melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**ATTORNEYS FOR T-MOBILE USA,
INC. and T-MOBILE US, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 17th day of October, 2018, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ _____