**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INTELLECTUAL VENTURES II LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| SPRINT SPECTRUM L.P., NEXTEL | § | Civil Action No. 2:17-cv-662-JRG-RSP |
| OPERATIONS, INC., ERICSSON INC., | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON, | § | **LEAD** |
| and ALCATEL-LUCENT USA INC., | § | |
| | § | **JURY TRIAL DEMANDED** |
| *Defendants.* | § | |
| | § | |
| T-MOBILE USA, INC., T-MOBILE US, INC., | § | Civil Action No. 2:17-cv-661-JRG-RSP |
| ERICSSON INC., and | § | |
| TELEFONAKTIEBOLAGET LM ERICSSON, | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendants,* | § | |
| | § | |
| v. | § | |
| | § | |
| NOKIA OF AMERICA CORPORATION, | § | |
| | § | |
| *Intervenor.* | § | |

**INTELLECTUAL VENTURES II LLC'S OPPOSITION
TO DEFENDANTS' MOTIONS IN LIMINE**

# TABLE OF CONTENTS

**Page**

1.  Defs.' MILs #2 and #3: Defendants' overbroad motions would bar IV's expert Mr. Bratic's proper reliance on the IV-███ license. ................................... 1

2.  Defs.' MIL #4: IV may permissibly reference Defendants' own marketing slogans. ........................................................................................................... 2

3.  Defs.' MIL #5: IV should be permitted to make comparisons for purposes of efficient presentation. .............................................................................. 3

4.  Defs.' MIL #6: Defendants' references to "dollars" and "similar revenue claims" are unacceptably vague. ...................................................................... 4

5.  Defs.' MIL #7: Evidence regarding the parties' negotiations is relevant to IV's counterclaim defenses. ................................................................................ 4

6.  Defs. MIL #8: IV's business agreements with ███ are admissible, relevant, and not unfairly prejudicial. ................................................................................ 5

7.  Defs.' MIL #9:  IV's damages expert Mr. Bratic properly relies on IV's licenses with ███████████. ........................................................................................ 6

8.  Defs.' MIL #10:  The cost of spectrum is not unduly prejudicial. .................... 6

9.  Defs.' MIL #11: IV does not intend to raise the outcome or judgments of the -577 litigation. ........................................................................................................ 8

10. Defs.' MIL #12: References to Ericsson's other litigations involving FRAND patents are relevant to IV's affirmative damages claims and defenses to Defendants' counterclaims. ........................................................................... 8

11. Defs.' MIL #13: IV's expert properly relies on Defendants' prior litigations. .................. 9

12. Defs.' MIL #14: The merger between Sprint and T-Mobile is relevant to IV's counterclaim defenses. ............................................................................... 10

13. Defs.' MIL #15: Defendants' proposal regarding IPRs is prejudicial and not feasible. ........................................................................................................ 10

14. Defs.' MIL #16: IV may impeach Defendants' experts with other experts' opinions. ....................................................................................................... 11

15. Defs.' MIL #17: Defendants' authorities do not support exclusion of all evidence regarding retained experts. ........................................................................... 12

16. Defs.' MIL #18: IV may *voir dire* potential jurors regarding their views of the U.S. legal system. ....................................................................................... 13

17. Defs. MIL #19: Indemnification is relevant to bias and motive. .................... 13

18. Defs.' MIL #20: Defendants seek to selectively bar presentation of evidence relating to costs and attorneys' fees so as to prejudice IV. .............................. 14

# <u>TABLE OF AUTHORITIES</u>

<span style="font-variant: small-caps;">CASES</span>

*Amstar Corp. v. Envirotech Corp.*,
    730 F.2d 1476 (Fed. Cir. 1984).............................................................................................3

*Amster v. River Capital Int'l Group*, LLC,
    No. 00 Civ. 9708 (DCDF), 2002 WL 2031614, at *1 (S.D.N.Y. Sept. 4, 2002) ...................14

*Bryan v. John Bean Div. of FMC Corp.*,
    566 F.2d 541 (5th Cir. 1978) ...............................................................................................12

*Cioffi v. Google, Inc.*,
    No. 2:13-cv-103-JRG-RSP, ECF No. 237, 69:22-70:4 (E.D. Tex. Jan. 26,
    2017) .......................................................................................................................................7

*DataTreasury Corp. v. Wells Fargo & Co.*
    No. 2:06-CV-72 DF, 2010 WL 11538713 (E.D. Tex. Feb. 26, 2010).....................................12

*DataTreasury Corp. v. Wells Fargo & Co.*,
    2:06-cv-72-DF, 2010 U.S. Dist. LEXIS 25291 (E.D. Tex. Mar. 4, 2010)................................5

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831, 856 (Fed. Cir. 2010)........................................................................................6

*In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial
    Proceedings*,
    No. 14 C 1748, 2018 WL 2095701, at *6 (N.D. Ill. May 5, 2018)........................................12

*Kansas City S. Ry. Co. v. Nichols Construction Co., LLC*,
    Nos. 05-1182 c/w et al., 2008 WL 11351313 (E.D. La. Oct. 1, 2008) ..................................14

*Mattel, Inc. v. MGA Entm't*,
    No. CV 04-9049, 2011 U.S. Dist. LEXIS 161179 (C.D. Cal. Jan. 17, 2011)..........................13

*Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*,
    993 F.2d 1201 (5th Cir. 1993) .............................................................................................12

*Prism Techs. LLC v. AT&T Mobility, LLC*,
    No. 8:12cv126, ECF No. 229, at 16 (D. Neb. Sept. 22, 2014) .................................................7

*Whitserve, LLC v. Comp. Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012).................................................................................................6

1.      **Defs.' MILs #2 and #3: Defendants' overbroad motions would bar IV's expert Mr. Bratic's proper reliance on the IV-████ license.**

With respect to their *in limine* motion No. 2, Defendants correctly state that "IV oppose[s] this motion only to the extent that it excludes certain testimony from IV employee Richard Harris's deposition . . . and paragraph 168 from [IV's damages expert] Mr. Bratic's report."  (Br. at 2.) Defendants now acknowledge that Mr. Harris's testimony is admissible (subject to hearsay objections not at issue in this motion) but challenge Mr. Bratic's reliance thereon.  *See id.* Specifically, Defendants object that the subject paragraph of Mr. Bratic's report ████████████ ████████████████████████████████████████████████████████████ ████████  *Id.*  But Defendants' identification of this alleged "impl[ication]" is not supported by the text of Mr. Bratic's report:

████ was properly entitled to enter a license with IV based on evaluating potential litigation risks; Mr. Harris is properly entitled to convey his understanding of the ████ negotiations to Mr. Bratic; and Mr. Bratic is properly entitled to rely on that understanding for his opinions regarding the comparability of the IV-████ license to the hypothetical negotiation in

1

this case.  Mr. Bratic will not otherwise testify in any way regarding a relationship between the IV-███████ license and IV's infringement claims here.

IV opposes Defendants' motion *in limine* No. 3 for the same reasons:  Defendants contend that this motion would bar paragraph 168 of Mr. Bratic's report, but as discussed immediately above, that paragraph simply represents Mr. Bratic's proper reliance on Mr. Harris's understanding of the IV-███████ negotiations.  Also as above, Mr. Bratic will not state or imply that ██████'s license solely covers the patents asserted by IV in this case.

## 2.    Defs.' MIL #4: IV may permissibly reference Defendants' own marketing slogans.

As demonstrated by IV's motion *in limine* No. 6, IV agrees with Defendants that the Court should exclude pejorative references to the IV or NPE business model.  However, there is no equivalence between the use of clearly pejorative terms to describe IV, such as "patent troll," with the use of T-Mobile's own affirmatively-adopted, trademarked marketing slogan.  IV's reference to T-Mobile as the "Un-Carrier" directly quoted T-Mobile's own presentation pre-admitted as an exhibit.  *See* D.I. 426 Ex. 7 at 30:12-31:24; Ex. 10 at TMO-CV577-01075411 ███████████████ █████████████████████████.  Despite Defendants' claims that reference to T-Mobile's business model unfairly prejudiced T-Mobile, Defendants never objected to IV's use of this term during the -577 trial, nor to IV's use of this and similar documents.  In essence, Defendants argue that a negative connotation arises from use of a marketing slogan that *T-Mobile itself created and actively uses*.  The court should reject this argument, as well as any attempt by Defendants to analogize T-Mobile's marketing slogan with clearly pejorative terms like "patent troll."

3.     **Defs.' MIL #5: IV should be permitted to make comparisons for purposes of efficient presentation.**

IV has no intention of making broad stroke comparisons between different company's products (i.e., Ericsson and Nokia base stations) to prove infringement.  The language as drafted, however, is overbroad and will prevent IV from introducing pointed testimony that is pertinent to the issue of infringement. ████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████  While Ericsson and Nokia implement the standards differently, the standards require *all base stations* to perform certain identical functions.  IV seeks introduction of evidence pertinent to the operation of these limited identical or substantially similar operations of accused products from two of the defendants.  IV has no intention of comparing any products other than those accused in this case.

Defendants cite to *Amstar Corp. v. Envirotech Corp.* for their proposition that a comparison between commercial products is "irrelevant."  730 F.2d 1476 (Fed. Cir. 1984).  In that case, however, the district court improperly found non-infringement by comparing defendant's product with plaintiff's commercial embodiment as opposed to the asserted claims.  Id. at 1481-1482. Unlike in *Amstar*, IV does not intend to make broad comparisons between the accused base stations and plaintiff's own products for the purposes of proving infringement.  Instead, IV will show infringement by comparing Defendants' products with each element of the asserted claims.  For purposes of efficiency, and where appropriate, IV will proffer evidence that Defendants' products operate similarly by complying with the same industry-wide standards.

Moreover, as the cases currently stand, there will be two trials, i.e., a -661 trial and a -662 trial.  In both cases, Ericsson *and* Nokia will be tried together, and IV will present evidence of both

products' infringement in the same trial.  It is inefficient and prejudicial to exclude evidence of identical functionality where the standard requires conformance across the industry.

### 4.      Defs.' MIL #6: Defendants' references to "dollars" and "similar revenue claims" are unacceptably vague.

The parties have reached an agreement in principle regarding this motion, but have not reduced it to final form.  IV here preserves its objections that Defendants' references to "dollars" and "similar revenue claims" are too vague to effectively implement at trial.

### 5.      Defs.' MIL #7: Evidence regarding the parties' negotiations is relevant to IV's counterclaim defenses.

As detailed in IV's own affirmative motion *in limine* No. 12 (D.I. 427 at 11-12), IV acknowledges and agrees with the general principle that evidence of the parties' prior dealings regarding the asserted patents should not be before the jury—as indeed the Court ordered in connection with the prior -577 litigation.  *See* 17-cv-00577-JRG, D.I. 294 (E.D. Tex. Jan. 8, 2019) at 4.  But the situation here is complicated by Defendants' counterclaims, resolution of which requires an inquiry into the parties' extensive history of license negotiations.  *See, e.g.*, D.I. 309 at 3-6, 13-14.  (IV's summary judgment motion regarding Defendants' counterclaims).  It is precisely for this reason that IV has moved to bifurcate Defendants' FRAND-related counterclaims and defenses, so as not to risk improper jury confusion.

Defendants otherwise attempt to rely on IV's interrogatory responses directed to the narrow issue of the Defendants' pre-suit notice of the specific patents-in-suit.  Br. at 5-6.  But the broad language of Defendants' motion could, if granted, have the prejudicial effect of precluding IV from introducing evidence relevant to IV's counterclaim defenses.  Accordingly, to the extent this motion is to apply to a proceeding involving Defendants' counterclaims—either bifurcated or not—it should be denied.

6.    **Defs. MIL #8: IV's business agreements with ▮ are admissible, relevant, and not unfairly prejudicial.**

IV's licenses with ▮ are admissible.  Defendants incorrectly argue they are not relevant merely because they do not figure into Mr. Bratic's royalty ***rate***.  But a license does not have to be a direct input into a royalty-rate calculation to be relevant.  The ▮ license factors directly into Mr. Bratic's royalty ***base*** calculation for the '641 patent, which Defendants acknowledge. Specifically, because ▮ has a license to the '641 patent, Mr. Bratic reduces the royalty base for that patent to account for the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮.  As in the trial against T-Mobile and Ericsson in February, Mr. Bratic is entitled to explain his royalty base calculation, including the fact of ▮ license.  *See, e.g.*, 17-cv-577 2/5/2019 PM Tr. 173:21-174:22.  This is not prejudicial, as demonstrated by the fact that the Defendants did not object either at trial or by motion to Mr. Bratic's explanation at trial in February.

Beyond that, the ▮ license to the '641 is relevant to secondary considerations, as opined by IV's validity expert Dr. Chrissan. Ex. 13; *DataTreasury Corp. v. Wells Fargo & Co.*, 2:06-cv-72-DF, 2010 U.S. Dist. LEXIS 25291, at *19-20 (E.D. Tex. Mar. 4, 2010) (denying defendant's *limine* seeking to exclude settlement licenses because they are admissible "for essentially all purposes" including damages and secondary considerations of non-obviousness). And IV's business agreements with ▮ are relevant to introduce IV to the jury, as was done in the trial against T-Mobile and Ericsson in February of this year, again, without any objection or claim of prejudice.  *See* 17-cv-577 2/4/2019 PM Tr. 164:21-165:5.

Defendants' claims of jury confusion underestimate the jury's ability to follow the Court's instructions.  Licenses to others in the industry are routinely admitted at trial without the jury being confused about its required infringement analysis, which they will be clearly instructed is to be a claim-by-claim, element-by-element consideration.  Further, any concerns about unfair prejudice

5

or jury confusion can be readily dealt with through argument, jury instructions, cross-examination, and Defendants' own presentation of counter-evidence. *Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 29 (Fed. Cir. 2012) ("Instead, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010))).  Accordingly, Defendants' motion on this point should be denied.

7. **Defs.' MIL #9: IV's damages expert Mr. Bratic properly relies on IV's licenses with ████████████████████.**

Defendants improperly seek to accomplish via a motion in limine what should properly be (and in fact, is) the subject of a *Daubert* motion.  IV's damages expert Mr. Bratic relies extensively on IV's license agreements with ████████████████████.  *See* Ex. 14 at ¶¶ 147-169, 177. Defendants have lodged their objections regarding Mr. Bratic's reliance on the ██████████████ licenses in their *Daubert* motion directed to Mr. Bratic's opinions.  To the extent that the Court denies Defendants' *Daubert* challenge, the same result should apply with respect to this motion.

In addition, Defendants' motion does not explain how the relief they request is to comport with their own damages experts' methodologies, which requires consideration of IV's licenses with at least ██████.  *See, e.g.*, Ex. 18.[1]

8. **Defs.' MIL #10:  The cost of spectrum is not unduly prejudicial.**

IV should be permitted to inform the jury of the barriers to entry and significant costs faced by those in Defendants' industry.  It is relevant context for the jury to know and understand Defendants' business and how important spectral efficiency is.  Defendants do not deny, nor can they, that IV's technical expert, Dr. Doug Chrissan, and IV's damages expert, Mr. Walt Bratic,

---

[1] ████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████

discuss spectrum at length in their reports, including its direct impact on a network's capacity, its high cost, the resulting critical need for efficient use of spectrum, and the way that the patents-in-suit allow for more efficient use of a limited and very expensive resource. *See, e.g.*, Ex. 14, Bratic TMO Report ¶ 69-70; Ex.15, Bratic Sprint Report ¶¶ 74-75; Ex. 11, Chrissan TMO/Ericsson Report ¶¶ 41, 61-65, 99.

There is nothing unduly prejudicial about the actual cost of spectrum, which, because of its magnitude, renders spectral efficiency an enormously important issue for Defendants. Generic references to "expensive" or other terms of relevance do not convey the true weight behind what makes efficient use of spectrum a key issue for carriers.

Defendants now claim that identifying the actual costs of spectrum prejudiced them in the -577 case and would do so again here. But notably, Defendants did not object in the -577 case, did not complain about it at any point during the trial (through either a timely *or* even untimely objection), nor are they seeking a new trial based on IV's evidence and argument about spectrum savings. Were it as prejudicial as Defendants claim, certainly they would be complaining about its impact in the -577 case. And Defendants also did not challenge Mr. Bratic's detailed discussion in this case of the importance of spectrum to carriers, the high costs carriers face to acquire spectrum, the critical need for efficient use of spectrum, and that the patents-in-suit provides for this more efficient use of spectrum.[2]   Accordingly, Defendants' motion should be denied.

---

[2] Defendants' cite to a *limine* that was granted based on the plaintiff's agreement at the pretrial conference, *see Cioffi v. Google, Inc.*, No. 2:13-cv-103-JRG-RSP, ECF No. 237, 69:22-70:4 (E.D. Tex. Jan. 26, 2017), and an out-of-district case in which a damages expert's methodology improperly linked cost savings to revenue as part of a direct input into the damages calculation, which has nothing to do with IV's use of the cost of spectrum here. *See Prism Techs. LLC v. AT&T Mobility, LLC*, No. 8:12cv126, ECF No. 229, at 16 (D. Neb. Sept. 22, 2014).

9.      **Defs.' MIL #11: IV does not intend to raise the outcome or judgments of the -577 litigation.**

Should the Court grant IV's motion to bifurcate, IV does not intend to discuss or raise the outcome or judgments of the -577 litigation in connection with its infringement case.  Of course, to the extent a witness, expert, T-Mobile, or Ericsson take contrary positions in these trials, IV should be permitted to use positions taken and statements to the extent otherwise permissible under the Federal Rules.

However, should Defendants' FRAND counterclaims be tried to the jury, the judgment of the -577 case is relevant.  As part of fully responding to Defendants' counterclaims, IV would need to introduce evidence of the parties' negotiation histories, ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████.  The $43 million judgment against the -577 defendants on only three patents from IV's portfolio may be relevant to demonstrate that IV's offers were FRAND-compliant.  Comparing Defendants' offers during the negotiations to the judgment on only three patents further shows Defendants' lack of interest in actually taking a license.

10.     **Defs.' MIL #12: References to Ericsson's other litigations involving FRAND patents are relevant to IV's affirmative damages claims and defenses to Defendants' counterclaims.**

As detailed above in its opposition to Defendants' motion *in limine* No. 13, the Court found in the -577 litigation that IV's damages expert Mr. Bratic may properly rely on evidence relating to Ericsson's affirmative licensing practices, as detailed in the record of Ericsson's prior affirmative litigations.  However, consistent with the Court's order and IV's practice in the -577 litigation, IV will not display to the jury information that would identify those Ericsson's licensing-related statements as having been made in the context of a prior litigation.



No. 6:10-CV-473, 2013 WL 4046225, at *16 (E.D. Tex. Aug. 6, 2013), *aff'd in part, vacated in part, rev'd in part on other grounds*, 773 F.3d 1201 (Fed. Cir. 2014).  Ericsson cannot both accuse IV of having breached contractual obligations, and at the same time preclude IV from submitting evidence showing Ericsson's own interpretation of proper performance of similar contractual obligations.  Defendants' motion should be denied.

**11.      Defs.' MIL #13: IV's expert properly relies on Defendants' prior litigations.**

Defendants' reference to the Court's ruling on this issue in the -577 completely ignores that the Court **did** allow IV to reference Ericsson witness statements from prior cases.  *See* D.I. 426 Ex. 10, 2/1/19 Pretrial Tr. at 43:177-44:8 ("I see no reason why Mr. Bratic can't use these limited number of paragraphs as a demonstrative if he needs to.  He certainly can testify about what he's relied on…To the extent there are […] relevant portions references in Mr. Bratic's report and he wants to use those portions as a demonstrative when he testifies, he certainly can do that.").  IV should similarly be allowed to reference these documents here, as documents relied upon by Mr. Bratic in the formation of his opinions, and to the extent that this motion *in limine* would prevent IV from referring to those documents it should be denied.

Further, IV should be allowed to reference material relied upon by Mr. Bratic relating to the fact that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Ex. 16, Expert Report of Walter Bratic, ¶ 356.  Like the

Ericsson witness statements referred to above, this material is used in the formation of Mr. Bratic's opinions, and is therefore proper for use as a demonstrative during Mr. Bratic's testimony at trial. Defendants' attempts to forbid IV from referencing any of this material would prevent Mr. Bratic from explaining the full basis of his opinions.

### 12. Defs.' MIL #14: The merger between Sprint and T-Mobile is relevant to IV's counterclaim defenses.

Each of Defendants' three arguments in support of this motion is incorrect. First, the fact that a merger has not been consummated does not preclude IV's reference to a pending merger between the parties. Second, should the Court grant IV's Motion to Bifurcate Defendants' FRAND Counterclaims and Defenses (D.I. 358), IV may wish to reference the merger between Sprint and T-Mobile in a combined proceeding, as the merger is relevant to IV's negotiation strategy as to T-Mobile and Sprint, and thus would properly be discussed in front of the jury. Finally, Defendants argue there is a danger of unfair prejudice, jury confusion, and waste of time if IV is allowed to reference the merger between Sprint and T-Mobile. But Defendants identify no reason for or source of any prejudice, confusion, or waste. The concept of corporate merger is not a foreign one to jurors, and IV can easily explain why and how it took that publicly-announced, pending merger into account when devising its negotiation strategy.

### 13. Defs.' MIL #15: Defendants' proposal regarding IPRs is prejudicial and not feasible.

Defendants are correct that references to post-grant filing at the PTO including IPRs should be excluded as irrelevant and prejudicial. Defendants' citations also confirm that this Court routinely excludes parties from making ***any*** reference to IPRs. *See* Br. at 12; *see also* IV's MIL #1. But IV disagrees with Defendants' request for an unworkable carve-out to discuss the costs and fees of IPRs. First, since IPRs are optional by nature, Defendants have not shown that IPRs bear any relevance to Defendants' counterclaim damages in this case. Second, any introduction

of IPRs by Defendants would be highly prejudicial to IV.  To substantively defend itself against the costs and fees of IPRs, IV would be forced to prejudice itself by explaining the fact that some IPRs were instituted and that the PTO is reconsidering some of the claims.  IV's only other option would be to not fully defend itself by not explaining the details of the IPRs including: 1) that IPRs are optional, and 2) that the PTO denied institution on at least some of the petitions.  This court should not permit Defendants to put IV in such a position.  Defendants are free to pursue these theories in a bifurcated trial limited to Defendants' counterclaims (and related defenses), but this Court should not allow Defendants to oppose bifurcation while simultaneously insisting that they must be allowed to introduce prejudicial evidence.

Defendants' alleged cure of allowing IV to cross-examine Defendants' witnesses regarding the IPRs does not alleviate any of the prejudice to IV discussed above.  Br. at 12-13.  Moreover, Defendants make no effort to explain the bounds of this counter carve-out for IV.  Defendants' briefing merely describes the carve-out as including "sufficient context," without any explanation of what that means.  *Id.*  During additional meet and confers, Defendants further refused to provide any details as to what Defendants would consider "sufficient context" and what would be out-of-bounds.  Defendants' insistence on carve-outs and counter carve-outs only further demonstrates the need to bifurcate Defendants' counterclaims.  In the absence of bifurcation, any introduction of IPRs, by carve-out or otherwise, is prejudicial and irrelevant.

### 14.    Defs.' MIL #16: IV may impeach Defendants' experts with other experts' opinions.

Defendants' motion focuses exclusively on impeaching one expert with the report of a non-testifying expert.  Br. at 13.  But the exclusion Defendants actually seek is far broader.  Defendants request a blanket exclusion of all references, for any reason, to any expert who submitted a report but does not appear at trial.  In this case, Defendants have retained duplicative and overlapping

testifying experts on multiple issues.  IV's experts have written rebuttal reports, and IV has travelled significantly to take these experts' depositions.  Defendants now, on the eve of trial, intend to sift through their experts to see whose opinions fared the best and eliminate all traces of their other experts, including those with contradictory opinions.

With respect to Defendants' concerns regarding impeachment, Defendants' reliance on *Bryan* and *Polythane* is misplaced.  In both cases, the court found counsel to have impermissibly used another expert's report to argue *substantive evidence*, not for impeachment.  *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 546 (5th Cir. 1978) (counsel impermissibly allowed "to argue substantively evidence that did not impeach the testifying expert"); *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993) (counsel impermissibly "used [the expert's] report in a substantive manner").  IV does not intend to submit substantive evidence from non-testifying experts' reports, but IV should not be precluded from impeaching one expert by referencing another expert's contradictory opinions or testimony.

### 15. Defs.' MIL #17: Defendants' authorities do not support exclusion of all evidence regarding retained experts.

Defendants' cases do not support their proposed *per se* rule, and have no bearing on this motion.  In *DataTreasury Corp. v. Wells Fargo & Co.*, the Court granted a motion *in limine* to exclude references to "the amount of legal fees and expenses that [Defendants] have incurred in defending this litigation."  No. 2:06-CV-72 DF, 2010 WL 11538713, at * 2 (E.D. Tex. Feb. 26, 2010).  That is not the motion before the Court.  And the Court in *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings* did not prohibit such arguments; the parties in that case came to an agreement, mooting the motion *in limine*.  No. 14 C 1748, 2018 WL 2095701, at *6 (N.D. Ill. May 5, 2018).  Neither case is relevant here.

16. **Defs.' MIL #18: IV may *voir dire* potential jurors regarding their views of the U.S. legal system.**

Defendants' motion *in limine* would prevent IV from using the *voir dire* process it used without objection in the previous -577 trial.  During *voir dire*, IV asked potential jurors about their opinions regarding frivolous lawsuits in the U.S. legal system.  *See* Ex.17 (-577 Transcript 2-4-2019 AM) at 55:12-58:16.  These questions were proper to evaluate any potential bias in the jury pool regarding the U.S. legal system, and Defendants did not object to those questions at the time. As the questions were posed in the -577 litigation during *voir dire*, there is no possible prejudice that could arise, and the questions have clear relevance for determining whether any jurors are biased in a particular manner regarding the U.S. legal system.  Accordingly, IV objects to this motion, as it would prevent IV from asking proper, allowable questions during *voir dire*.

17. **Defs. MIL #19: Indemnification is relevant to bias and motive.**

Defendants certainly did not think indemnity agreements between them were prejudicial when they hinged their trial strategy in the -577 case on Ericsson standing up for its customer T-Mobile.  Having lost, the Defendants now about-face and claim indemnity agreements are so prejudicial as to warrant a *limine*.  Agreements that imply or demonstrate the parties are working together—like indemnification agreements—are relevant to bias and motive.  *See Mattel, Inc. v. MGA Entm't*, No. CV 04-9049, 2011 U.S. Dist. LEXIS 161179, at *6-7, *22-23 (C.D. Cal. Jan. 17, 2011).  There is nothing unduly prejudicial about them.  Contrary to Defendants' argument, that T-Mobile and Ericsson chose not to object during the -577 trial shows it is not so unfairly prejudicial as for Defendants to make a complaint about it—whether in front of the jury, outside the jury's presence, or in a post-trial motion.

18.      **Defs.' MIL #20: Defendants seek to selectively bar presentation of evidence relating to costs and attorneys' fees so as to prejudice IV.**

Defendants again fail to explain how their proposed carve-out regarding litigation costs and attorneys' fees could be effectively implemented in a combined proceeding.  In the absence of bifurcation, Defendants propose a "for me, but not for thee" rule with respect to this evidence.  But a general exploration of litigation expenses by IV is relevant to contextualizing Defendants' overbroad counterclaim damages—e.g., Ericsson contends that it would not have incurred a single dollar of litigation expenses but for IV's alleged breach of contractual obligations owed under the ETSI Policy, and Defendants seek to recover costs relating to IPRs, notwithstanding that IPRs are entirely separate proceedings from this litigation (which no infringement defendant is ever required to file).  IV should be allowed to address these issues during trial.

Defendants otherwise rely on inapposite authority.  The *Rembrandt* case that Defendants cite stands for the proposition that evidence regarding counsel receiving a contingent fee ("fees obtained or potentially obtained by counsel *as a result of this case*") should be not admitted.  Br. at 15.  IV is not aware that this situation applies to any of Defendants' counsel, and does not intend to elicit such evidence, in any case.  Otherwise, the prior *Intellectual Ventures* case that Defendants cite is distinguishable precisely because it lacked counterclaims such as Defendants assert here.  *See id.*  Furthermore, Defendants' overbroad motion would serve to bar inquiry into the compensation of Defendants' experts, contravening the "well-settled" rule "that examining an expert's compensation is relevant to bias and is permissible."  *Kansas City S. Ry. Co. v. Nichols Construction Co., LLC*, Nos. 05-1182 c/w et al., 2008 WL 11351313, at *3 (E.D. La. Oct. 1, 2008), citing *Amster v. River Capital Int'l Group*, LLC, No. 00 Civ. 9708 (DCDF), 2002 WL 2031614, at *1 (S.D.N.Y. Sept. 4, 2002).  Accordingly, based on the agreement of the parties (which is absent here), this Court could properly bar *all* evidence regarding costs and

fees, rather than implementing the selective rule that Defendants now pursue.  Accordingly,

Defendants' motion should be denied.

DATED:  April 16, 2019                    Respectfully submitted,


                                          */s/ Martin J. Black*
                                          Martin J. Black
                                          **LEAD ATTORNEY**
                                          Pennsylvania Bar No. 54319
                                          Kevin M. Flannery
                                          Pennsylvania Bar No. 62593
                                          DECHERT LLP
                                          Cira Centre
                                          2929 Arch Street
                                          Philadelphia, PA 19104
                                          Tel:    (215) 994-4000
                                          Fax:    (215) 994-2222
                                          martin.black@dechert.com
                                          kevin.flannery@dechert.com

                                          Justin F. Boyce
                                          California Bar No. 181488
                                          DECHERT LLP
                                          2440 W. El Camino Real, Suite 700
                                          Mountain View, CA 94040-1499
                                          Tel:    (650) 813-4800
                                          Fax:    (650) 813-4848
                                          justin.boyce@dechert.com

                                          T. John Ward Jr.
                                          Texas Bar No. 00794818
                                          Claire Abernathy Henry
                                          Texas Bar No. 24053063
                                          WARD, SMITH & HILL, PLLC
                                          1507 Bill Owens Pkwy.
                                          Longview, TX 75604
                                          Tel:    (903) 757-6400
                                          Fax:    (903) 757-2323
                                          Email:  jw@wsfirm.com
                                          Email:  claire@wsfirm.com

                                          *Counsel for Plaintiff Intellectual Ventures II LLC*


                        **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing document was served via e-mail, in accordance with Local Rule CV-5(d) on February 23, 2018 on the following counsel of record:

David Finkelson
Andriana S. Daly
George B. Davis
Kristen M. Calleja
**McGuireWoods LLP**
800 East Canal Street
Richmond, VA 23219-3916        **&**
SprintIV4MW@mcguirewoods.com

Jason W. Cook
Kuan-Chieh Tu
**MCGUIREWOODS LLP**
2000 McKinney Avenue
Suite 1400
Dallas, TX 75201                **&**
SprintIV4MW@mcguirewoods.com

David A. Nelson
Stephen A. Swedlow
Brianne M. Straka
John Poulos
Athena Dalton
**QUINN  EMANUEL  URQUHART**

**SULLIVAN, LLP**
191 N. Wacker Dr., Suite 2700
Chicago, IL 60606
nokiaiv-qe@quinnemanuel.com

John T. McKee
**QUINN  EMANUEL  URQUHART**

**SULLIVAN, LLP**
51 Madison Ave., 22nd Fl.
New York, NY 10010
nokiaiv-qe@quinnemanuel.com

Robert W. Weber
**Smith Weber, LLP**
5505 Plaza Drive
Texarkana, TX 75503
bweber@smithweber.com

Deron R. Dacus
**The Dacus Firm, PC**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
ddacus@dacusfirm.com

*Attorneys for Sprint Spectrum LP*
*and Nextel Operations, Inc.*

*Attorneys for Alcatel-Lucent USA*
*Inc.*

Douglas M. Kubehl
Jonathan B. Rubenstein
Jeffery S. Becker
Harrison G. Rich
Johnson K. Kuncheria
Steven T. Jugle
Megan V. LaDriere
Melissa L. Butler
Bryan D. Parrish
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
BBEDTXIVEricsonInternal@BakerBotts.com

Michael Hawes
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002
BBEDTXIVEricsonInternal@BakerBotts.com

Lauren J. Dreyer
**BAKER BOTTS L.L.P.**
1299 Pennsylvania Avenue NW
Washington, DC 20004
BBEDTXIVEricsonInternal@BakerBotts.com

Melissa R. Smith
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
melissa@gillamsmithlaw.com

Brian P. Wikner
**Wikner PLLC**
5325 Ballard Ave. NW, Suite 216
Seattle, Washington 98107
Email: brian@wiknerpllc.com

*Attorneys for T-Mobile USA Inc., T-Mobile US Inc., Ericsson Inc. and Telefonaktiebolaget LM Ericsson*

Asim M. Bhansali
Kate Lazarus
Nicholas Sethi
**Kwun Bhansali Lazarus LLP**
555 Montgomery Street,
Suite 750
San Francisco, California 94111
KBLTMUSIV@kblfirm.com

Josh A. Krevitt
New York State Bar No. 2568228
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue, 47th Floor
New York, New York 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
E-mail: GDC-T-Mobile-IV4-94@gibsondunn.com

Stuart M. Rosenberg
Andrew Robb
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA 94304-1211
Email: GDC-T-Mobile-IV4-94@gibsondunn.com

*Attorneys for T-Mobile USA Inc. and T-Mobile US Inc.*

18

*/s/ Laura E. Fleming*
Laura E. Fleming

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document and attachments thereto are authorized to be filed under seal pursuant to the Protective Order entered in this case.

<u>*/s/ Martin J. Black*</u>
Martin J. Black